To this end, we note that this court has explained that, "[r]elative to credibility, violent crimes might reflect on the moral character of a witness and therefore are not without probative value on credibility. However, the link between [violent] crime and truthfulness is, at best, weak and the potential prejudice is significant." *State v. Stevie Williamson*, No. W2019-00437-CCA-R3-CD, 2020 WL 1274770, at *5 (Tenn. Crim. App. Mar. 16, 2020), *perm. to appeal denied* (Tenn. Nov. 17, 2020) (citations and internal quotation marks omitted). We further note that the Tennessee Supreme Court has previously determined that robbery is a crime of dishonesty and is probative of credibility. *State v. Caruthers*, 676 S.W.2d 935, 941 (Tenn. 1984). Additionally, the offense of burglary is "'highly probative of credibility'" because it is a crime of dishonesty. *See State v. Baker*, 956 S.W.2d 8, 15 (Tenn. Crim. App. 1997). This court has held that even if a prior conviction involves the same or similar crime for which the defendant is being tried, it does not automatically require its exclusion. *See id.*; *State v. Miller*, 737 S.W.2d 556, 560 (Tenn. Crim. App. 1987). However, if "the prior conviction and instant offense are similar in nature the possible prejudicial effect increases greatly and should be more carefully scrutinized." *Long v. State*, 607 S.W.2d 482, 486 (Tenn. Crim. App. 1980). A court must analyze the prior conviction and the offense on trial to determine if the conviction's probative value on credibility is outweighed by the danger of unfair prejudice.

The post-conviction court concluded that while trial counsel might have been able to argue that the aggravated assault and reckless endangerment convictions were not probative of the Petitioner's credibility, the Petitioner's robbery and attempted aggravated robbery convictions were probative of his credibility and would have been admissible for impeachment purposes at trial. Even if the trial court had concluded that the robbery convictions were too similar to the facts adduced at trial, the Petitioner's prior conviction of attempted aggravated burglary was a crime of dishonesty and was highly probative of the Petitioner's credibility. Therefore, we agree with the post-conviction court that the Petitioner failed to demonstrate that he suffered any prejudice by trial counsel's alleged deficiency.

## (5) Right to Testify

The Petitioner alleges that trial counsel performed deficiently by not discussing with him prior to trial his right to testify. The Petitioner asserts that if he had been aware of the advantages of testifying, he would have testified at trial. He also asserts that he would have testified at trial if the trial court had "ruled that he could only be impeached with his 'robbery related convictions' and the burglary conviction." The State responds that trial counsel advised the Petitioner regarding testifying and gave the Petitioner the choice of whether or not to testify. The State contends that the Petitioner failed to establish that he was prejudiced by any alleged deficiency.

The post-conviction court found that trial counsel properly advised the Petitioner about testifying and that the Petitioner chose not to testify. The post-conviction court stated that trial counsel could not advise the Petitioner regarding any "pros" of testifying "because there were not any." The post-conviction court noted that trial counsel advised the Petitioner "that the State could re-emphasize damaging parts of its case through cross-examination." Further, trial counsel explained how the Petitioner's prior convictions could be used to impeach his credibility.

The Petitioner said that he would have testified that while he was walking through "the cut," he was shot in the mouth and that he started bleeding everywhere. He also would have testified that he did not fire a gun on the night of the incident. He would have explained that a man from the neighborhood attempted to help him after he was shot, which could have explained how the Petitioner's blood got on the red shirt and the gun.

The post-conviction court concluded that trial counsel was not deficient because he advised the Petitioner about the risks of testifying. *See Quincy Moutry v. State*, No. E2017-00353-CCA-R3-PC, 2018 WL 2465147, at *6 (Tenn. Crim. App. June 1, 2018). We agree. Moreover, had the Petitioner chosen to testify, his credibility would have been impeached with at least some of his prior convictions. The Petitioner is not entitled to relief in this regard.

### (6) Impeach Mr. Higgs

The Petitioner contends that trial counsel was ineffective by failing to impeach Mr. Higgs with his preliminary hearing testimony. The Petitioner maintains that at the preliminary hearing, Mr. Higgs said that he was not positive whether he heard a pistol being fired but that at trial, he testified that he heard pistols being fired after the shotgun blast. The Petitioner asserts that this "inconsistency" would have caused the jury to have "reasonable doubt as to whether any of the suspects were actually firing pistols on the night in question." The State contends that Mr. Higgs preliminary hearing testimony was at most "a slight equivocation" and was not inconsistent; therefore, trial counsel was not ineffective by not cross-examining Mr. Higgs "on such an insignificant matter."

The post-conviction court noted that at the post-conviction hearing, Mr. Higgs testified that he heard shots being fired from both types of pistols and a shotgun, which was consistent with his trial testimony. At the post-conviction hearing, Mr. Higgs stated that he thought he had testified the same at the preliminary hearing. However, after listening to a recording of his preliminary hearing testimony, Mr. Higgs agreed that he had testified that he was not sure he heard a shot being fired from a pistol. The post-conviction court found that Mr. Higgs's "statement was not profoundly inconsistent with the statement he made at trial. . . . Just because he appeared to be more confident about what he heard at

trial that he was at the Preliminary Hearing does not make those statements inconsistent." *See Johnson v. State*, 145 S.W.3d 97, 122 (Tenn. Crim. App. 2004) ("[W]e do not discern any clear impeachment value from such a line of questioning because the report was not necessarily inconsistent" with witness testimony). Trial counsel testified at the post-conviction hearing that he failed to see the significance of cross-examining Mr. Higgs on this alleged inconsistency. Trial counsel's decision regarding whether to cross-examine a witness regarding an issue "is a strategical or tactical choice, if informed and based on adequate preparation." *Lawrence Warren Pierce v. State*, No. M2005-02565-CCA-R3-PC, 2007 WL 189392, at *7 (Tenn. Crim. App. Jan. 23, 2007) (citing *Hellard v. State*, 629 S.W.2d 4, 9 (Tenn. 1982)). "[S]trategic decisions during cross-examination are judged from counsel's perspective at the point of time they were made in light of the facts and circumstances at that time." *Johnnie W. Reeves v. State*, No. M2004-02642-CCA-R3-PC, 2006 WL 360380, at *10 (Tenn. Crim. App. Feb. 16, 2006) (citing *Strickland*, 466 U.S. at 690). Moreover, we note that at trial, the strongest evidence against the Petitioner was Officer Falatko's testimony that he saw the Petitioner "stop and 'square off' to fire at Officer Falatko and Mr. Higgs" and that he saw the muzzle flashes from the Petitioner's silver pistol. *Rodney Turner*, 2013 WL 6706092, at *1. Therefore, the Petitioner suffered no prejudice and is not entitled to relief. *See Darrell Carpenter v. State*, No. W2019-01248-CCA-R3-PC, 2020 WL 5626233, at *8 (Tenn. Crim. App. Sept. 18, 2020).

*(7) Fingerprint Expert*

The Petitioner contends that trial counsel was ineffective by failing to hire a fingerprint expert to test the pistol found lying next to the Petitioner. He concedes that the post-conviction court correctly found that he failed to establish prejudice because he failed to present a fingerprint expert at the post-conviction hearing. "When a petitioner contends that trial counsel failed to discover, interview, or present witnesses in support of his defense, these witnesses should be presented by the petitioner at the evidentiary hearing." *Black v. State*, 794 S.W.2d 752, 758 (Tenn. 1990). The Petitioner is not entitled to relief on this issue. *Perry Brent Lanham v. State*, No. W2021-00310-CCA-R3-PC, 2021 WL 5768444, at *4 (Tenn. Crim. App. Dec. 6, 2021)

The Petitioner also argues that the post-conviction court erred in denying his request for funding for an independent fingerprint expert. He acknowledges, however, that the Rules of the Supreme Court of Tennessee mandate that "[i]n non-capital post-conviction proceedings, funding for investigative, expert, or other similar services shall not be authorized or approved." Tenn. Sup. Ct. R. 13, § 5(a)(2). The Petitioner likewise acknowledges that the Tennessee Supreme Court has decided this issue in *Davis v. State*, 912 S.W.2d 689, 695 (Tenn. 1995). Regardless, he argues that his rights to due process and equal protection have been violated because capital post-conviction petitioners may be entitled to funding for expert assistance.

In *Davis*, the Tennessee Supreme Court noted that there is no statutory provision entitling post-conviction petitioners to state-funded experts. *Davis*, 912 S.W.2d at 695. The *Davis* court concluded that was there was not a constitutional right to such services, relying on the fact that neither the State Constitution nor the Federal Constitution guarantees post-conviction petitioners the right to counsel. *Id.* at 696. The *Davis* court rejected the argument that the denial of State funding for expert services could constitute a violation of due process or equal protection. *Id.* The Petitioner was not entitled to testing under *Davis*.

### (8) Paramedics and Post-Run Report

The Petitioner argues that trial counsel was ineffective by failing to interview the paramedics about whether they cut the Petitioner down from the fence after they arrived on the scene on the night of the incident and by failing to obtain the paramedics' post-run report. The Petitioner states that trial counsel did not recall seeing the "post-run report" that was created by the paramedics after the incident. The Petitioner maintains that he tried to give the post-run report to trial counsel but that trial counsel said he did not need to look at it and that it would not be helpful. The Petitioner contends that the State's witnesses Officer Falatko and Officer Jack Henry testified that the paramedics cut the Petitioner off the fence; however, the post-run report reflected that the Petitioner was lying on the ground when the paramedics arrived. Therefore, the Petitioner asserts that trial counsel could have impeached the State's witnesses with the post-run report and by calling the paramedics as witnesses. The State responds that any error was the Petitioner's "own doing" because he had the post-run report but did not provide it to counsel. The State contends that any inconsistency between the report and the trial proof was minimal and did not affect the overwhelming proof against the Petitioner at trial.

The post-conviction court noted that paramedic Mr. Ervin testified at the post-conviction hearing that he did not independently recall the events of the night in question. Mr. Ervin stated that his fellow paramedic, Mr. Mahoney, who was deceased at the time of the post-conviction hearing, wrote the post-run report and that Mr. Ervin signed the report. The post-conviction court further noted that trial counsel testified that he did not recall ever seeing the post-run report and that he did not recall it being in the discovery. The Petitioner testified that his mother mailed him the post-run report but that he did not show it to trial counsel because the Petitioner did not know the significance of the report. The post-conviction court found that the State's proof against the Petitioner was "overwhelming." Notably, the post-conviction court found, "Whether the Petitioner was found hanging on the fence or on the ground there was a gun found near him with his blood on it. Petitioner was seen approximately ten minutes before the shooting with two other men and armed." The post-conviction court concluded that trial counsel was not deficient. The evidence

does not preponderate against the findings of the post-conviction court. The Petitioner is not entitled to relief in this regard.

### (9) Inadequate Meetings with the Petitioner

The Petitioner contends that trial counsel was ineffective by failing to adequately meet with him, asserting that trial counsel met with him in the jail only twice prior to trial. The State responds that the Petitioner discounts the meetings trial counsel and the Petitioner had on court dates. The State further responds that the Petitioner provides only a generalized allegation that the outcome of trial would have been different with additional meetings; therefore, the Petitioner cannot establish prejudice.

The post-conviction court found that trial counsel testified that he met with the Petitioner and that the Petitioner testified that he met with trial counsel in jail and on court dates. Additionally, the post-conviction court noted that the Petitioner conceded that he and trial counsel reviewed the discovery, that trial counsel provided him a copy of the discovery, and that the Petitioner reviewed the discovery on his own. The Petitioner also conceded that they discussed whether he would testify, analyzed the prospective trial proof, and reviewed his prior record. The post-conviction court concluded that the Petitioner failed to prove that trial counsel was deficient. Other than speculating that more frequent meetings would have led trial counsel to better advising the Petitioner regarding whether to testify at trial, to filing a pretrial Rule 609 motion, and to being more prepared at trial, the Petitioner adduced no proof to support his contention that his meetings with trial counsel were inadequate and prejudiced him. The Petitioner is not entitled to relief in this regard.

### (10) Rules 403 and 404(b)

The Petitioner contends that appellate counsel was ineffective for failing to argue in the motion for new trial and on appeal that the "trial court erred by allowing the State to introduce into evidence the various weapons and ammunition that were recovered" from the apartment. In a related issue, the Petitioner contends that trial counsel was ineffective by failing to cite Tennessee Rules of Evidence 403 and 404(b) when objecting to the admission of the evidence. The Petitioner maintains that without citing any rules of evidence in support of his objection, trial counsel objected to the admission of the evidence found in the apartment but that the objection was overruled. The proof at trial revealed that "a red shirt with what appeared to be blood on it, a pistol, and a shotgun" were found in the apartment. *Rodney Turner*, 2013 WL 6706092, at *2. The Petitioner's blood and DNA were found on the red shirt. *Id.* Spent shell casings found by the fence where the Petitioner was discovered matched the shotgun that was recovered from the apartment. *Id.*

The Petitioner, citing Tennessee Rule of Evidence 403, argues that "any probative value of the guns and ammunition found inside of this apartment was substantially outweighed by the danger of unfair prejudice." He also argues that the admission of the guns and ammunition violated Tennessee Rule of Evidence 404 (b) because it led the jury to believe he had committed other bad acts. The Petitioner contends that trial counsel and appellate counsel should have argued that the evidence recovered from the apartment should not have been admitted because the State failed to establish that the Petitioner had been inside the apartment. The State responds that trial counsel explained that he challenged the admission of the evidence on the grounds he thought were appropriate and moved on when the objection was overruled, which was a strategic decision. The State also asserts that an objection pursuant to Rule 403 would have been overruled because the proof was highly probative with little to no risk of unfair prejudice. Further, a Rule 404(b) objection would have been unsuccessful because "the existence of physical items in a certain location does not amount to evidence of 'other crimes, wrongs, or acts.'"

The post-conviction court found that at trial, trial counsel objected to the admission of the evidence found in the apartment by arguing that the State failed to make a connection between the Petitioner, the apartment, and the items therein; thus, the evidence was not relevant. Trial counsel could not recall why he did not cite Rules 403 or 404(b). Appellate counsel explained that she saw no basis to challenge the admission of the evidence because the items were recovered from an apartment that was linked to people the police tracked to the apartment, and the Petitioner had been with the same people shortly prior to the shooting. The post-conviction court concluded that any objections under Rules 403 and 404(b) would have been unsuccessful because the evidence found in the apartment was relevant.

The post-conviction court further concluded that appellate counsel made a tactical decision not to raise the issue on appeal and that appellate counsel chose to focus on a strong argument "so not to cloud the issues." A reviewing court should not second-guess strategic choices or measure counsel's performance by "'20-20 hindsight.'" *Henley v. State*, 960 S.W.2d 572, 579 (Tenn. 1997) (quoting *Hellard*, 629 S.W.2d at 9). The post-conviction court concluded that neither trial counsel nor appellate counsel were deficient by failing to argue Rule 403 or Rule 404(b).

Tennessee Rule of Evidence 403 provides that relevant evidence may be excluded when "its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Tenn. R. Evid. 403. The term "unfair prejudice" has been defined as "'[a]n undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one.'" *State v. Banks*, 564 S.W.2d 947, 951 (Tenn. 1978) (quoting Fed. R. Evid. 403, Adv. Comm. Note).

Clearly, the evidence found in the apartment was highly probative of the Petitioner's guilt. Moreover, while the evidence was prejudicial toward the Petitioner in that it helped establish his participation in the crimes, it was not unfairly prejudicial. Accordingly, we agree with the post-conviction court that any objection under Rule 403 would have been unavailing. The Petitioner has failed to establish that either trial counsel or appellate counsel were deficient or that he suffered prejudice in this regard.

Tennessee Rule of Evidence 404(b) provides that "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity with the character trait. It may, however, be admissible for other purposes." The Petitioner has failed to explain in what *other* crime, wrong, or act the evidence found in the apartment was admitted to prove conformity with a character trait. Instead, the evidence was admitted as proof of the offense for which the Petitioner was on trial. As such, Rule 404(b) was not applicable. *See State v. Sherman Dewayne Dillard, Jr.*, No. M2018-02268-CCA-R3-CD, 2020 WL 1897167, at *5 (Tenn. Crim. App. Apr. 16, 2020). Therefore, the Petitioner has not established that trial counsel or appellate counsel were deficient for failing to raise Rule 404(b) or that he was prejudiced by the failure to argue Rule 404(b). He is not entitled to relief on this issue.

### (11) Brady

The Petitioner contends that appellate counsel was ineffective by failing to argue in the motion for new trial and on delayed appeal that the State's failure to turn over Officer Falatko's statement to internal affairs prior to trial was a *Brady* violation. The State contends that appellate counsel made a strategic decision not to pursue a *Brady* claim after the trial court ruled the statement was inadmissible. Additionally, the State contends that the Petitioner cannot establish prejudice because the statement was not "material."

The Due Process Clause of the Fourteenth Amendment to the United States Constitution and the "Law of the Land" clause of article I, section 8 of the Tennessee Constitution affords all criminal defendants the right to a fair trial. The United States Supreme Court, in *Brady v. Maryland*, 373 U.S. 83 (1963), held that "suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or punishment, irrespective of good faith or bad faith of the prosecution." Exculpatory evidence includes information or statements of witnesses which are favorable to the accused and evidence in which the defense may use to impeach a witness. *See State v. Walker*, 910 S.W.2d 381, 389 (Tenn. 1995). In order to establish a *Brady* violation, a defendant must show the existence of four elements: (1) that the defendant requested the information (unless the evidence is obviously exculpatory, in which case the State is bound to release the information whether requested or not); (2) that the State withheld the information; (3) that the withheld information was favorable; and

(4) that the withheld information was material. *Id.* Evidence is material when "there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *State v. Edgin*, 902 S.W.2d 387, 390 (Tenn. 1995).

As we stated *supra*, the Petitioner has unsuccessfully pursued many avenues to obtain Officer Falatko's statement to internal affairs for use at trial. At the post-conviction hearing, the Petitioner submitted as an exhibit a motion he filed for disclosure of *Brady* materials and maintained that trial counsel cited *Jencks* and *Brady* when arguing that the Petitioner should be provided with the statement. The Petitioner complains, however, that appellate counsel argued that the failure to provide the Petitioner with the statement was a *Jencks* violation and that the statement constituted newly discovered evidence.

The Petitioner notes several "critical" inconsistencies between Officer Falatko's statement and his trial testimony. However, as the post-conviction court observed, this court has previously determined that "[a]ny discrepancies between Officer Falatko's trial testimony and his prior statement are not so significant that a different result at trial may have occurred had the prior statement been provided to the [Petitioner]at the trial." *Rodney Turner*, 2017 WL 3268543, at *5. As such, the post-conviction court concluded "that if the statement had been produced before trial it would not have changed its result." The post-conviction court found that the Petitioner failed to establish either that appellate counsel was deficient or that the Petitioner suffered any prejudice. We agree. The Petitioner is not entitled to relief in this regard.

### (12) Rule 11 Application

The Petitioner contends that appellate counsel was ineffective by failing to file a Rule 11 application for permission to appeal to the supreme court. He argues that because appellate counsel had not withdrawn from representation, she was obligated to file his Rule 11 application; therefore, her performance was deficient. He further argues that if his Rule 11 application had been prepared by appellate counsel, instead of pro se, "there is a reasonable probability that it would have been granted." The State responds that appellate counsel did not file a Rule 11 application after discovering that the Petitioner filed a pro se Rule 11 application and that her decision not to amend the application with additional, frivolous issues was not deficient. The State further argues that the Petitioner did not suffer prejudice because the supreme court considered the Rule 11 application and denied it on the merits.

The post-conviction court found that appellate counsel had intended to file a Rule 11 application but that the Petitioner informed her that he filed a pro se Rule 11 application and that he "indicated he wished to file and handle the Rule 11 himself." Thereafter,

appellate counsel filed a motion to withdraw as counsel. The Petitioner's Rule 11 application was denied by the supreme court. The post-conviction court concluded that the Petitioner "was not denied a Rule 11 application and he has failed to demonstrate counsel was ineffective."

> We note that Tennessee Supreme Court Rule 14 provides:
>
> Permission for leave to withdraw as counsel for an indigent party after an adverse final decision in the Court of Appeals or Court of Criminal Appeals and before preparation and filing of an Application for Permission to Appeal in the Supreme Court must be obtained from the intermediate appellate court by filing a motion with the Appellate Court Clerk not later than fourteen (14) days after the intermediate court's entry of final judgment.

Moreover, ordinarily "a defendant may not proceed pro se while simultaneously represented by counsel." *State v. Smith*, 492 S.W.3d 224, 242 (Tenn. 2016). Accordingly, appellate counsel's failure to file a timely motion to withdraw and to file a Rule 11 application for permission to appeal was arguably deficient performance. Nevertheless, we note that the Petitioner is not entitled to counsel in a Rule 11 application. *See Marvin Christopher Long v. State*, No. M2017-01758-CC-R3-CD, 2018 WL 6288172, at *4 (Tenn. Crim. App. Dec. 13, 2018). Furthermore, the Petitioner's pro se Rule 11 application was considered by the supreme court, and it was denied. Thus, the Petitioner was not denied his opportunity for second-tier appellate review. Therefore, the Petitioner did not establish that he suffered any prejudice. He is not entitled to relief on this issue.

### (13) Cumulative Error

Finally, the Petitioner contends that the individual errors he alleged in support of post-conviction relief, when examined cumulatively, entitle him to a new trial. The cumulative error doctrine applies only where there has been more than one actual error, which the Petitioner has failed to establish. *See State v. Hester*, 324 S.W.3d 1, 76 (Tenn. 2010). Therefore, he is not entitled to relief.

### CONCLUSION

Based on the foregoing, we affirm the judgment of the post-conviction court.

JOHN EVERETT WILLIAMS, PRESIDING JUDGE

- 33 -