IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
AT MEMPHIS

RODNEY TURNER,

      Petitioner,

V.                                                                      CASE NO. 2:23-cv-2075-MSN-tmp

SHARON N. ROSE,

      Respondent.

## PETITIONER'S AMENDED PETITION FOR HABEAS CORPUS RELIEF

Comes now the Petitioner Rodney V. Turner, by and through counsel, under 28 U.S.C. § 2241, and submits his Amended Petition for Habeas Relief. This Amended filing is within the statutory time. In support thereof, Petitioner states as follows:

### INTRODUCTION

Petitioner Rodney V. Turner is confined at the Tennessee Department of Corrections (Northwest Correctional Complex) after his conviction in the Shelby County Criminal Court at Memphis on April 18, 2011, on two counts of attempted first-degree murder and one count of employing a firearm during the commission of a felony. The trial court sentenced Petitioner to two concurrent sentences of forty years for the two attempted murders and ten years consecutive for the firearm. The first six years of the ten-year sentence require 100% service.

### Relevant Trial and Appellate Posture

1.  On August 5, 2010, a Shelby County Grand Jury indicted Petitioner on two (2) counts of attempted First Degree Murder. DE 10-1, PageID 61, and one count of employing a firearm during the commission of a dangerous felony. DE 10-1, PageID 63.

1

2.  On August 18, 2011, the jury convicted Petitioner as charged in the indictment on two counts of attempted first-degree murder and employment of a firearm in the commission of a dangerous felony. DE 10-1, PageID 69.

3.  The trial court classified Petitioner as a Range II multiple offender with multiple enhancement factors. DE 10-1, PageID 75, 77.

4.  Counsel for Petitioner offered no proof of mitigating factors during the Petitioner's sentencing. DE 10-1, PageID 77.

5.  On September 16, 2011, the trial court sentenced Petitioner on the criminal attempt murder charges to a concurrent term of 40 years in the Department of Corrections, with ten (10) consecutive years on the employment of a firearms charge. DE 10-1, PageID 73.

6.  On November 15, 2011, Petitioner, through counsel, filed a motion for a new trial, amending it on July 26, 2012. That day, the trial court explained its decision to exclude Officer Falatko's statement because it was not admissible for any purpose for anybody under any proceeding. DE 10-1, PageID 806.

7.  On August 9, 2012, the trial court entered corrected judgment forms, and Petitioner filed a Notice of Appeal on August 27, 2012. DE 10-1, PageID 103.

8.  On December 18, 2013, the Tennessee Court of Criminal Appeals opined that Petitioner waived his motion for a new trial because of an untimely filing in the trial court. The issue presented centered on the trial court's ruling denying Petitioner access to a statement given by Officer Falatko (an alleged victim in one of the attempted murder counts) because it was an interdepartmental statement issued by him under threat of termination and protected from disclosure under Garrity. DE 10-11, PageID 806. State v. Rodney V. Turner, W2012-01930-

2

CCA-R3-CD, 2013 WL 6706092 (Tenn. Crim. App. At Jackson, December 18, 2013), perm app. denied, Tenn. May 23, 2014).

9. The appellate Court opined that Garrity did not support the trial court's conclusion that Officer Falatko's statement was not discoverable. DE 10-11, PageID 808. Still, the appellate Court found that overwhelming evidence corroborated Falatko's testimony against Petitioner and precluded plain error review. Id.

10. Despite not having Officer Falatko's statement, the appellate Court determined that the statement probably would not have changed the trial outcome. DE 10-16, Robert Brooks testimony, PageID 929-932.

11. The Petitioner, through counsel via FedEx, dispatched an application seeking permission to appeal on February 18, 2014, and docketed on February 19, 2014. On May 23, 2014, the Supreme Court of Tennessee denied Petitioner's application to appeal. DE 10-13-14, PageID 810-811.

12. On February 9, 2015, Petitioner filed a pro se petition for post-conviction relief, PageID 855-877. The pro se petition outlined nine areas wherein the Petitioner alleged ineffective assistance of counsel. Id. at 864-877.

13. On February 12, 2016, the post-conviction petition was subsequently amended by appointed counsel. DE 10-15, PageID 882. The amended petition, filed on February 12, 2016, alleged ineffective assistance of counsel, specifically trial counsel's untimely filing of a motion for a new trial and the subjection of the issue to the more stringent appellate review of plain error. Id.

14. On July 13, 2016, the trial court heard the petition for post-conviction relief. It ruled that

3

there was no basis for acquittal and the denial of Officer Falatko's statement to Petitioner during trial was harmless and did not justify a new trial. DE 10-18, PageID 971-982; DE 10-15, PageID 917.

15. On July 19, 2016, Petitioner, through counsel, filed a Notice of Appeal. DE 10-15, PageID 919.

16. On July 31, 2017, the Court of Criminal Appeals affirmed the trial court's judgment. DE 10-27, PageID 1070; State v. Rodney Turner, No. W2016-01520-CCA-R3-CD (Tenn. Crim. App. at Jackson, July 31. 2017).

17. Petitioner filed a pro se Rule 11 application to appeal because his appellate counsel did not file one, and she did not file a timely motion to withdraw. The appellate Court denied Ms. House's motion to withdraw. DE 10-29, House testimony, Page ID 1925-27.

18. On November 22, 2017, the Supreme Court of Tennessee denied Petitioner's application to appeal.  DE 10-27, PageID 1080.

19. On March 2, 2018, Petitioner filed a pro se petition for post-conviction relief. DE 10-27, PageID 1082-1089.

20. On June 1, 2018, the trial court appointed private counsel, Lance Chism, to represent the pro se Petitioner. DE 10-27, PageID 1091.

21.  On January 29, 2020, the appointed counsel filed a Memorandum supporting the amended petition for post-conviction relief. DE 10-27, PageID 1094-1118.  Petitioner's amended petition alleged 17 instances of ineffective assistance of counsel. DE 10-27, PageID 1142-1143. The trial court addressed Petitioner's Eighth Amendment claim of cruel and unusual punishment. DE 10-27, PageID  1150-1152.

4

22. On April 19, 2021, the trial court entered its order denying Petitioner's post-conviction relief. Id.

23. On August 19, 2022, after a recorded oral argument, the Tennessee Court of Criminal Appeals affirmed the rulings of the post-conviction Court. DE 10-38, App. Opinion, PageID 1690-1722.

24. On September 26, 2022, Lance Chism filed a Rule 11 Application seeking permission to appeal. DE 10-40, App. for Perm. To Appeal, PageID 1724-71.

25. On December 14, 2022, the Supreme Court of Tennessee denied Petitioner's application to appeal. DE 10-41, Perm. Denied, PageID1806.

<u>PETITIONER'S CONFINEMENT VIOLATES THE CONSTITUTION ON FOLLOWING INDIVIDUAL AND COLLECTIVE GROUNDS</u>

According to 28 U.S.C. § 2254(a), a federal district court may entertain a petition for writ of habeas corpus relief by a person in custody as a result of a state-court conviction "only on the ground that he is in custody by violation of the Constitution or laws or treatises of the United States. The claims in this habeas corpus petition have been presented to and decided by the state courts. Their decisions were contrary to established federal law and/or constituted an unreasonable application of clearly established federal law based on an unreasonable determination of the facts in light of the evidence presented. 28 U.S.C. § 2254(d).

**<u>GROUND ONE</u>**

1. **Petitioner's legal representation in the trial court violated the Sixth Amendment's guarantee to effective assistance of counsel.**

Petitioner received ineffective assistance of counsel in the trial court. The Sixth Amendment guarantees that in "all criminal prosecutions, the accused shall enjoy the right…to

5

have the assistance of counsel for his defense." His counsel was deficient in the following

particulars:

Trial Counsel was ineffective for his failure to request a Rule 609 Morgan hearing to

determine which, if any, of Petitioner's convictions the State could use against him at trial. Had

trial counsel utilized a Morgan hearing, Petitioner would have known with certainty the

convictions for which the State could impeach. A strong argument existed for disallowance of

Petitioner's prior felonies of robbery (3 counts), Criminal attempt robbery (4 counts), Criminal

Attempt Aggravated Assault (2 counts), Criminal Attempt Aggravated Burglary, and Reckless

Endangerment with a Deadly Weapon. When the impeaching offense is the same as the crime

for which the Defendant is on trial, the prejudicial effect on the substantive issues increases.

Knowing the convictions the State could use at trial would have allowed the Petitioner to give

persuasive testimony to support his plea of innocence. Trial counsel should have argued that

Petitioner's convictions for Aggravated Assault and Reckless Endangerment were not only

similar to the trial charges but were not probative of credibility. Trial counsel's failure to

conduct the Morgan hearing was deficient, and the deficiency prejudiced his defense by denying

Petitioner an effective response to Officer Falatko's testimony.

Officer Falatko testified that he saw four men at the fence, and the Petitioner squared off

to shoot at him using his right hand to hold the pistol. DE 10-27, PageID 1120. Mr. Higgs

(victim ) testified that he only saw three men at the fence. DE 10-27, PageID 1120 The State's

witness, Shaterrica Rufus,  testified that ten minutes before the shooting, she observed the

Petitioner with a black long gun. DE 10-27, PageID 1121.

The Petitioner testified that had he known what convictions the State could use, he would

6

have testified, even with the sole exclusion of aggravated assault and reckless endangerment, that

he was walking through the "cut" when Officer Falatko shot him. The jury hearing the

discrepancy in the testimony concerning three verses four men, the location of the Petitioner's

body, and the visibility of Petitioner's face would likely have had reasonable doubt about

Petitioner's involvement in the shooting and given credence to Petitioner's testimony. Only the

Petitioner's testimony could harmonize to his benefit the inherent discrepancies and

contradictions in the testimonies of Falatko, Rufus, and Higgs.

### GROUND TWO

2. **Trial counsel's failure to conduct a 609 Morgan hearing to determine which of Petitioner's convictions could be used at trial fell below an objective standard of reasonableness.**

Petitioner's trial counsel gave objectively unreasonable ineffective assistance of counsel

when he failed to file a motion for a pretrial Rule 609 hearing to determine whether the State

could use any of Petitioner's prior convictions to impeach the Petitioner's testimony. State v.

Morgan, 541 S.w.2d 385 (Tenn. 1976). If the witness subject to impeachment is the accused,

the trial court "must determine that the conviction(s) probative value on credibility outweighs

its unfair prejudicial effect on substantive issues. Tenn.R.Evid. 609(a)(3).

In weighing the probative value and the prejudicial impact of the prior convictions, the

trial court must particularly consider two criteria: (1) the relevance of the prior conviction(s)

to the Defendant's credibility and (2) the similarity of the prior conviction(s) to the crime for

which the Defendant is on trial. State v. Mixon, 983 S.W.2d 661, 674 (Tenn. 1999). Evidence

of convictions for the same type of crime should be admitted sparingly because of the

impression on jurors that if a person committed a crime in the past, he committed the offense

7

for which he is on trial. <u>State v. Russell</u>, 382 S.W.3d 312, 317 (Tenn. 2012).

Trial counsel did not recall his reason for not filing a 609 motion. He testified that he did not research the body of law concerning impeachment with crimes similar to the indicted offenses.

Petitioner testified that trial counsel met with him twice before the trial. In Court, trial counsel would only inform him of reset dates. He testified that if the trial court had excluded only his assault and reckless endangerment convictions, he would have testified before the jury. Petitioner testified that he wanted to testify until trial counsel told him that he could be impeached with all prior convictions. The Petitioner did not know that he could file a motion for a pretrial ruling on the admissibility of his prior convictions. App. Opinion, 8-19-2022.

In <u>Banks v. State</u>, No. W2020-01164-CCA-R3-PC (Tenn. Crim. App. October 14, 2021), the Court found that counsel's failure to file a request for a hearing to determine whether evidence of his prior conviction was admissible for impeachment purposes. The Court ruled that counsel made a reasonably based "judgment call" not to pursue a Morgan hearing despite having filed the pretrial motion.

Trial counsel did not recall his reason for not filing a 609 motion. He testified that he did not research the body of law concerning impeachment with crimes similar to the indicted offenses. Petitioner testified that even had the trial court only excluded the assault and reckless endangerment, he would have testified.

8

## GROUND THREE

3. **Trial Counsel was ineffective for failing to interview the paramedics who responded to the scene on the night of the crime.**

The Sixth Amendment, applicable to the States by the terms of the Fourteenth

Amendment, provides that the accused shall have the assistance of counsel in all criminal

prosecutions. The right to counsel is the right to effective assistance of counsel. Strickland v.

Washington, 466 U.S. 668, 686, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

A petitioner is not entitled to the benefit of hindsight, may not second-guess a reasonably

based trial strategy by his counsel, and cannot criticize a sound but unsuccessful tactical

decision made during the proceedings. Adkins v. State, 911 S.W.2d 334, 347 (Tenn. Crim.

App. 1994). Deference to tactical choices only applies if the choices are informed based on

adequate preparation. Cooper v. State, 847 S.W.2d 521, 528 (Tenn. Crim. App. 1992).

Adequate preparation includes counsel's "duty to make a reasonable investigation or a

reasonable decision that makes particular investigation unnecessary. State v. Burns, 6 S.W.3d

453, 461 (Tenn. 1991)(citing Strickland, 466 U.S. at 691).

The Petitioner submits that trial counsel was ineffective for failing to interview the

paramedics who responded to the crime scene. Had he done so, he would have learned that

paramedics found Petitioner on the ground. As a result, Officer Falatko's testimony that the

paramedics cut Petitioner from the fence when they arrived went unchallenged. State witness

Officer Jack Henry also testified that paramedics cut Petitioner from the fence. Had trial

counsel impeached the officers, the jury would have had reasonable doubt about Officer

Falatko's testimony that the derringer pistol lay on the ground next to Petitioner. Successive

9

impeachment on material issues would likely have created reasonable doubt sufficient to

acquit the Defendant. DE 10-2, PageID 220-223.

## GROUND FOUR

4. **Trial Counsel's failure to hire an independent forensic expert to examine the derringer for fingerprints was objectively unreasonable, given the varying testimonies of the State's witnesses.**

Trial counsel was ineffective for failing to hire an independent fingerprint expert to

examine the gun found at the scene of the crime. Trial counsel testified at the post-

conviction hearing that he did not recall whether there was any proof in the record that

the gun belonged to Petitioner. He did remember Officer Falatko's testimony. Trial

counsel testified that Officer Falatko's testimony was why the jury convicted the

Petitioner. T.B.I. analyzed the gun for D.N.A. evidence but failed to analyze it for

fingerprints. An independent examination by a fingerprint expert would likely have

proven why the State did not introduce fingerprint evidence, and its absence would have

cast doubt on the State's case, resulting in Petitioner's acquittal. Why collect D.N.A. from

the crime scene and neglect critical fingerprint evidence of the weapon allegedly involved

in the shooting? DE 10-27, PageID 1095.

## GROUND FIVE

5. **Trial Counsel's representation of Petitioner was ineffective when counsel remained silent at Petitioner's sentencing hearing and offered no argument or witness for mitigation.**

Here, the trial court sentenced Petitioner to the maximum sentence under the statute

without the benefit of counsel. Counsel, though present, offered no argument for leniency

because of "who the judge was." Petitioner fairly presented this claim to all state court levels,

10

including the State's highest Court on discretionary review. A petitioner need not present to

all state court levels if the State has explicitly disavowed state Supreme Court review as an

available remedy. Tennessee Supreme Court Rule 9 eliminated the need to seek review in the

Tennessee Supreme Court. Adams v. Holland, 330 F.3d 398, 402 (6th Cir. 2003).

A trial court's decision regarding the length, range, or manner of service of sentence for

an abuse of discretion. T.C.A. § 40-35-401(a). The federal habeas court affords a

presumption of reasonableness to within-range sentences that reflect a proper application of

the purposes and principles of the Sentencing Act. State v. Bise, 380 S.W.3d 682, 202 (Tenn.

2012).

The trial court applied multiple enhancement factors and imposed the maximum

sentences within the range for each of the Petitioner's convictions. Sentences should be no

greater than that deserved for the offense committed" and "the least severe measure necessary

to achieve the purposes for which the sentence is imposed." T.C.A. § 40-35-103(2) & (4).

In Petitioner's case, he received the maximum sentence without the benefit of counsel.

Counsel testified that he remained silent because he had a subjective perception of the judge.

This admission is the equivalent of abandoning the defense of the Petitioner based upon trial

counsel's perceived knowledge of the judge's propensities. The trial court's reputation also

included mercy afforded to the worst defendants at sentencing. Trial counsel's subjective

belief to refrain from mitigation proof and arguments "given who the judge was" fell below

the standard governing effective assistance of counsel under Strickland. Deference to tactical

choices only applies if the choices are informed and based upon adequate preparation.

Adequate preparation includes counsel's "duty to make a reasonable investigation or a

11

reasonable decision that makes particular investigation unnecessary. Supra.

Relying upon a subjective belief and not offering mitigating proof or argument because of what a particular judge might do at sentencing does not comport with the Sixth Amendment guarantee of effective counsel.

The State court's finding that trial counsel's total inaction at Petitioner's sentencing met the Sixth Amendment right to the effective assistance of counsel was not just incorrect; it was unreasonable. Trial counsel's decision to say nothing at the Petitioner's sentencing lacked justification and was an error well understood and comprehended in existing law. There is no room for fair-minded disagreement.

Petitioner had a constitutional right to the effective assistance of counsel at sentencing.

In this case, trial counsel did not provide any mitigation proof at trial. Trial counsel testified at the post-conviction hearing that "he had many conversations with Petitioner's mother but that he apparently did not think about calling her as a witness at the sentencing hearing because I didn't do it." Trial counsel stated that he did not think it was necessary to argue for leniency given who the judge was." Id.

Under the Constitution, a defendant, not the lawyer, has the right to remain silent. Sentencing is a critical stage of the prosecution, and to be without counsel, through his total inaction, violates the Sixth Amendment. The right to effective assistance of counsel is not infringed unless counsel's mistakes call into question the fundamental justice of a defendant's conviction or sentence. Based on his "it wouldn't do any good" belief, counsel's silence deprived the Petitioner of a fair sentencing with effective legal representation.

A. **There is a reasonable probability that trial counsel's election to say nothing at sentencing prejudiced the Petitioner.**

12

The test for prejudice is whether there is a reasonable probability that, but for counsel's unprofessional error, the result of the proceedings would have been different. Cornwell v. Bradshaw, 559 F.3d 398 (6th Cir. 2009). See Frazier v. Huffman, 343 F.3d 780 (6th Cir. 2003)(finding prejudice where counsel presented no mitigating evidence except the Defendant's one-sentence plea of mercy).

In this case, trial counsel allowed the trial court to sentence the convicted Defendant without proof of mitigation. The trial court, a historically merciful judge, if presented with any mitigation proof, in all probability would not have sentenced Petitioner to the maximum 50-year sentence allowable under the statute. Competent trial counsel would have realized that Petitioner had nothing to lose through an argument for leniency and the introduction of mitigation evidence. "Any amount of additional jail time has Sixth Amendment significance." Missouri v. Frye, 566 U.S. 134 (2012). Trial counsel's representation of the Petitioner at the sentencing hearing fell far below an objective standard of reasonableness.

Without counsel's argument for leniency or the production of any witness, the trial court sentenced him to the maximum sentence under the law.

## GROUND SIX

6. **Trial Counsel's failure to file a timely motion for a new trial is presumptively prejudicial and violates the Sixth Amendment's guarantee to effective assistance of counsel.**

Trial counsel's failure to timely file a motion for a new trial resulted in the waiver of critical appellate issues under the more favorable standard of review. The appellate Court could only review the record for issues that resulted in outright dismissal of the case, such as sufficiency of the evidence. State v. Dodson, 780 S.W.2d 778, 780 (Tenn.

13

Crim. App. 1989). The relevant question on appeal is "Whether, after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." The appellate Court's review was limited to plain errors affecting substantial rights. Tenn. R. Crim. P. 52(b).

### GROUND SEVEN

7.  **Appellate Counsel was ineffective for failing to argue in her motion for a new trial and on appeal that the State's nondisclosure of Officer Falatko's interdepartmental statement was a Brady and Jencks violation.**

Petitioner asserted to the state courts that the prosecution withheld evidence violating Brady v. Maryland, 373 U.S. 83 (1963). The Petitioner alleges that the prosecution violated his right to due process and a fair trial by violating the principles espoused in Brady by intentionally failing to turn over exculpatory evidence of Officer Falatko's statement provided immediately after the crime.

A Brady claim has three elements: (1) the evidence at issue must be favorable to the accused, either because it is exculpatory or because it is impeaching; (2) the evidence must have been suppressed by the State, either willfully or inadvertently, and (3) prejudice must have ensued.

The trial court did not allow trial counsel to question Officer Falatko about the circumstances surrounding his statement. Had the State provided Officer Falatko's statement to the Petitioner, it would have cast a different light on the testimony of the State's primary witness, Officer Falatko. The inconsistencies within Officer Falatko's excluded statement and his trial testimony would likely have had more impact on a jury than they did on the appellate

14

judges. Under Brady, the lower Court's findings of fact, such as whether the Defendant requested the information or whether the State withheld the information, are reviewed on appeal de novo, with a presumption of correctness. However, the lower Court's conclusions of law, whether the information favored the Defendant or its materiality, is purely a de novo standard of review with no presumption of correctness. Officer Falatko's statement differed from his trial testimony as follows:

(1) Officer Falatko stated that he saw a muzzle flash from the shotgun in his statement. At trial, he testified, adding that he saw a muzzle flash from the pistol.

(2) In his statement, he testified that the gunmen wore bandanas, but at trial, he did not testify about bandanas.

(3) In his statement, Officer Falatko testified that Petitioner wore blue jean shorts with a white t-shirt with writing. At trial, officer Falatko testified that the man with the shotgun wore all black. DE 10-27, PageID 1114.

(4) In his statement, Officer Falatko testified that the Petitioner held the gun in his right hand. At trial, Falatko omitted this testimony. Petitioner is left-handed and had the State provided the statement to the defense at trial, proof could have shown that Petitioner is left-handed. Id. at 1115.

(5) In his statement, Officer Falatko testified that paramedics cut Petitioner from the fence, as did State witness Jack Henry. This information would have prompted the defense to interview paramedics, establishing that Petitioner was on the ground when they arrived. Id.

These inconsistencies were material and likely would have created reasonable doubt in the jurors' minds about Petitioner's guilt, especially in light of Officer Falatko's testimony that there were four men and Mr. Higgs' testimony that there were three. The jury would have afforded less weight to Officer Falatko's testimony when confronted with various material inconsistencies and contradictions. The defense would have utilized the earlier statement as more reliable because Officer Falatko gave it immediately after the crime.

<u>GROUND EIGHT</u>

8. **The cumulative errors of Petitioner's trial and appellate counsel combined resulted in ineffective assistance of counsel, ultimately depriving him of due**

15

**process of law under the Fourteenth Amendment.**

When viewed together, trial and appellate counsel's numerous errors require reversal of Petitioner's conviction. Under cumulative error analysis, "a defendant must show that the combined effect of individually harmless errors was so prejudicial as to render his trial fundamentally unfair." United States v. Trujillo, 376 F.3d 593, 614 (6th Cir. 2004). Errors considered alone might not be prejudicial enough to amount to a deprivation of due process but cumulatively produce a fundamentally unfair trial setting. Id.

In Petitioner's case, the cumulative errors began with excluding from the jury the impeaching cross-examination of Officer Falatko with his prior statement, failure of trial counsel to file a motion for a new trial; Petitioner's lack of representation at sentencing, and at the appellate level by his first appointed counsel.

Petitioner's representation and the mountain of errors, even if individually harmless, rendered his trial fundamentally unfair.

Respectfully submitted,

/s/Linda K. Garner, BPR 13573
Attorney for the Plaintiff
40 South Main Street, Suite 1523
(901) 524-1111
(901)524-1004 facsimile
lgarner4@comcast.net

16

## <u>CERTIFICATE OF SERVICE</u>

I, Linda K. Garner, certify that a copy of Petitioner's Amended Petition for Habeas Corpus Relief was delivered to all interested parties through the Court's E.C.F. filing system and emailed on December 3, 2023.


s/Linda K. Garner


17