## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TENNESSEE
## WESTERN DIVISION

RODNEY V. TURNER,

      Petitioner,

v.                                Case No. 2:23-cv-02075-MSN-tmp

SHARON N. ROSE,

      Respondent.

---

**ORDER DENYING MOTION TO AMEND HABEAS PETITION; GRANTING THE
MOTION TO DISMISS PETITION PURSUANT TO 28 U.S.C. § 2254; DISMISSING
THE PETITION PURSUANT TO 28 U.S.C. § 2254; DENYING A CERTIFICATE OF
APPEALABILITY; CERTIFYING THAT AN APPEAL WOULD NOT BE TAKEN IN
GOOD FAITH; AND DENYING LEAVE TO PROCEED IN FORMA PAUPERIS ON
APPEAL**

---

Before the Court are: (1) the Petition Pursuant To 28 U.S.C. § 2254 For Writ of Habeas

Corpus By A Person In State Custody (ECF No. 1, "§ 2254 Petition") filed by Petitioner Rodney

V. Turner[1]; (2) Respondent's Motion To Dismiss The Habeas Corpus Petition (ECF Nos. 11 and

12, "MTD"); (3) Petitioner's response in opposition to the MTD (ECF No. 18, "MTD Response");

(4) Respondent's reply to Petitioner's MTD Response (ECF No. 19); (5) Petitioner's Amended

Petition For Habeas Corpus Relief, which is construed as a motion to amend the § 2254 Petition

(ECF No. 20, "MTA"; *see also* ECF No. 21 at PageID 1872); and (6) Respondent's Response In

Opposition To The MTA (ECF No. 22, "MTA Response").

---

[1] Turner's Tennessee Department of Correction ("TDOC") prisoner number is 00417958.
He is confined at the Northeast Correctional Complex ("NECX"), in Tiptonville, Tennessee. (ECF
No. 1 at PageID 1; ECF No. 1-2 at PageID 25.) (*See also* https://foil.app.tn.gov/foil/details.jsp
(TDOC Felony Offender Information website) (last accessed Oct. 8, 2024).)

For the reasons stated below, the Court **DENIES** the MTA because it would be futile to amend the § 2254 Petition to raise time-barred claims that do not relate back. Further, because Petitioner's habeas claims in the § 2254 Petition are either (1) non-cognizable in federal habeas, (2) procedurally defaulted for failure to exhaust, or (3) improperly pled, the Court **DISMISSES** the § 2254 Petition in its entirety.

## BACKGROUND

### A.     Factual Background & Trial

On April 13, 2010, a grand jury in Shelby County, Tennessee, returned an indictment charging Petitioner with: (1) two counts of first-degree murder, a Class A felony; and (2) one count of employing a firearm during the commission of a dangerous felony, a Class C felony (collectively, the "Charges"). (ECF No. 10-1 at PageID 61–64 (the "Indictment").) The Charges arose from a home invasion and vehicle theft in Memphis, Tennessee on August 3, 2009, near the apartment of Terry Higgs. The events culminated in an exchange of gunfire between four suspects[2] and law enforcement ("Incident"). *See Turner v. State*, No. W2021-00531-CCA-R3-PC, 2022 WL 3573406, at *1 (Tenn. Crim. App. Aug. 19, 2022) ("*Turner III*"), *perm. app. denied* (Tenn. Dec. 14, 2022).

The Tennessee Court of Criminal Appeals ("TCCA") summarized the evidence about the Incident that was presented at Petitioner's trial:

> In the early morning hours of August 3, 2009, Officer Brian Falatko of the Memphis Police Department (MPD) responded to an "auto theft" call. When Officer Falatko stepped out of his patrol car, the victim, Terry Higgs, came running up to him. Officer Falatko testified that Mr. Higgs seemed "pretty upset" and said to Officer Falatko, "They're trying to rob me, they've taken my car." Officer Falatko recalled that Mr. Higgs "appeared as though he was trying to get away from someone." Mr.

---

[2] Petitioner, Jamichael Branch, Kristopher Burchett, and Deshawn Rogers were charged in the Indictment. (*See* ECF No. 10-1 at PageID 64.)

2

Higgs told Officer Falatko that the men were running along a nearby fence that separated two apartment complexes.

Officer Falatko testified that he and Mr. Higgs were walking towards the fence when he saw "four individuals" running along the fence. Almost immediately, one of the men shot at Officer Falatko and Mr. Higgs with "what appeared to be a shotgun." Another man, the [Petitioner], began shooting at them with "what appeared to be a pistol." Officer Falatko testified that he knew it was a pistol because the [Petitioner] was "back lit extremely well" and he could see "the silver glean from the light." A third man then began shooting at them with another pistol.

Officer Falatko testified that Mr. Higgs "was struck by the shotgun blast" and that he pushed Mr. Higgs behind him to protect Mr. Higgs. According to Officer Falatko, he then saw the [Petitioner], who was wearing a "white shirt and blue jean shorts," stop and "square off" to fire at Officer Falatko and Mr. Higgs. Officer Falatko testified that he "could see the muzzle flashes coming from" the silver pistol. Officer Falatko pulled out his gun and shot at the [Petitioner] three times, hitting him on the third shot. The men with the shotgun and the other pistol took cover behind some nearby dumpsters and continued to shoot at Officer Falatko.

Officer Falatko testified that a fourth man in a red shirt tried to help the [Petitioner] over the fence but that the [Petitioner's] shirt got stuck on the fence, and he was left hanging there. The man in the red shirt abandoned the [Petitioner] when more police officers arrived to assist Officer Falatko. Officer Jack Henry of the MPD testified that he responded to Officer Falatko's call for backup. When Officer Henry arrived on the scene, he saw the [Petitioner] hanging from the fence and a man in a red shirt trying to help the [Petitioner] before running away.

Officer Henry found a "two-shot," silver derringer pistol on the ground near the [Petitioner's] feet. In addition to the derringer found by the [Petitioner's] feet, police officers also recovered spent shotgun casings near the fence. In the neighboring apartment complex, witnesses saw a man wearing a red shirt and another man run into an apartment after the shooting. Police officers found Chris Burchette and a man known as "Strilla" inside the apartment. A search of the apartment revealed a red shirt with what appeared to be blood on it, a pistol, and a shotgun.

Later testing by the Tennessee Bureau of Investigation (TBI) determined that the derringer found at the [Petitioner's] feet had the [Petitioner's] blood and DNA on it. The derringer was in working order and had two spent casings in it, meaning that it had been fired. The [Petitioner's] blood and DNA were also found on the red shirt discovered in the apartment where Mr. Burchette and "Strilla" had run into after the shooting. The spent shell casings found by the fence matched the shotgun recovered from the apartment.

Mr. Higgs testified that he called the police because a man known as "G-Baby" had walked into his apartment and taken the keys to his car. According to Mr. Higgs, after he got off the phone with the police he went outside to see if he could find his car and he saw a man with a shotgun. Mr. Higgs testified that he ran back into his house and slammed the door. Mr. Higgs then saw "some more guys standing" outside his apartment. When Officer Falatko arrived, Mr. Higgs went outside to tell him about the men. Mr. Higgs testified that as he and Officer Falatko approached the men, the man with the shotgun fired at them and then "two more guys behind him fired with handguns." Mr. Higgs further testified that he only saw three men along the fence. Mr. Higgs was struck by buckshot from the shotgun and ran back to his apartment when Officer Falatko began shooting at the men.

Shaterrica Rufus testified that she lived in a nearby apartment complex and that she saw the [Petitioner] with "Strilla" and "G-Baby" the day before the shooting. Ms. Rufus further testified that she again saw the [Petitioner] with "Strilla" and "G-Baby" approximately ten minutes before the shooting and that the [Petitioner] was carrying a black "long gun." Ms. Rufus also testified that she saw Mr. Burchette wearing a red shirt and carrying a handgun before the shooting.

*Turner III*, 2022 WL 3573406, at *1–2 (citing *State v. Turner*, No. W2012-01930-CCA-R3-CD, 2013 WL 6706092, at *1–2 (Tenn. Crim. App. Dec. 18, 2013) ("*Turner I*"), *perm. app. denied* (Tenn. May 23, 2014)).

On August 18, 2011, the jury returned a guilty verdict on all Charges. *State v. Turner*, No. W2016-01520-CCA-R3-CD, 2017 WL 3268543, at *1 (Tenn. Crim. App. July 31, 2017) ("*Turner II*"), *perm. app. denied* (Tenn. Nov. 22, 2017). (*See also* ECF No. 10-1 at PageID 70; ECF No. 10-4 at PageID 486–87.) After a sentencing hearing on September 16, 2011 (ECF No. 10-6 at PageID 542–66), the trial court sentenced Petitioner to concurrent sentences of forty years for both counts of attempted first-degree murder. *Turner I*, 2013 WL 6706092, at *1. (*See also* ECF No. 10-1 at PageID 71-91; ECF No. 10-6 at PageID 563–64.) The trial court also imposed a ten-year sentence for the employment-of-a-firearm conviction and ordered that six years of such sentence be served at one hundred percent. *Id*. The trial court ordered that the sentence for the employment-of-a-firearm conviction be served consecutively to the sentences for the attempted first-degree murder convictions, for a total effective sentence of fifty years. *Id*. At trial and the sentencing

4

hearing, Petitioner was represented by counsel Coleman W. Garrett. *Turner III*, 2022 WL 3573406, at *2. (*See also* ECF No. 10-2 at PageID 104; ECF No. 10-6 at PageID 542.) In September 2011, Garrett moved to withdraw from representation. *Turner III*, 2022 WL 3573406, at *2. (*See also* ECF No. 10-1 at PageID 92–93; ECF No. 10-15 at PageID 898 and 901.)

On November 15, 2011, Garrett filed an untimely motion for new trial on behalf of Petitioner. (ECF No. 10-1 at PageID 98–99.) Substituted counsel, Robert C. Brooks, filed an amended motion for new trial on July 26, 2012.[3] *Turner III*, 2022 WL 3573406, at *2. (*See also* ECF No. 10-1 at PageID 92–93, 100–01.) The trial court denied the motion for new trial on July 26, 2012. (ECF No. 10-1 at PageID 102.)

## B. <u>Direct Appeal</u>

On August 27, 2012, Petitioner filed a notice of direct appeal, arguing that the trial court erred by failing to require the State to produce a prior statement made by Officer Falatko to internal affairs. Petitioner argued that the statement could have contained "valuable impeachment material." *Turner III*, 2022 WL 3573406, at *2 (citing *Turner I*, 2013 WL 6706092, at *2). (*See also* ECF No. 10-1 at PageID 103; ECF No. 10-10 at PageID 789.) Brooks represented Petitioner on direct appeal. *See Turner I*, 2013 WL 6706092, at *1. (*See also* ECF No. 10-9 at PageID 744.) The TCCA held that the Petitioner's issue was waived due to untimeliness. *Turner I*, 2013 WL 6706092, at *3.[4] (*See also* ECF No. 10-11 at PageID 807 ("the the Defendant's issue is waived

---

[3] The plausible inference from the record is that the state court granted Garrett's September 2011 motion to withdraw as counsel after Garrett filed the November 2011 motion for new trial. *See*, *e.g.*, ECF No. 10-1 at PageID 100–01 (Brooks represented Petitioner at least as early as July 2012 for the purpose of the amended motion for new trial).

[4] The logical inference from the TCCA's ruling on direct appeal is that the court concluded that both the initial motion for new trial (filed by Garrett), and well as the amended motion for new trial (filed by Brooks), were untimely. *Turner I*, 2013 WL 6706092, at *3. (*See also* ECF No. 10-11 at PageID 806–07 ("Almost two months after entry of the judgments, the Defendant

because he filed his motion for new trial approximately two months after the judgments were entered and subsequently filed his notice of appeal almost one year late").)

In examining the issue for plain error, the TCCA observed that "[i]n *Garrity* [*v. New Jersey*, 385 U.S. 493 (1967)], the United States Supreme Court held that 'statements obtained under threat of removal from office' by several police officers could not later be used to prosecute the officers because the statements had been coerced." *Turner I*, 2013 WL 6706092, at *5. (*See also* ECF No. 10-11 at PageID 808.)  However, nothing in *Garrity* suggested that Officer Falatko's statement could not be produced under Tennessee Rule of Criminal Procedure 26.2 or that the trial court "could not require the statement [to be] produced for an in camera inspection or retained for appellate review" to determine whether the statement contained any possible impeachment material. *Id*. (*See also* ECF No. 10-11 at PageID 802.)  Regardless, the TCCA held that because overwhelming evidence at trial corroborated Officer Falatko's testimony, plain error relief was not warranted. *Id.* (*See also* ECF No. 10-11 at PageID 808.)  Accordingly, the TCCA affirmed the judgments of the trial court. *Id.* (*See also* ECF No. 10-11 at PageID 808–09; ECF No. 10-12 at PageID 810.)  The Tennessee Supreme Court ("TSC") denied discretionary review. (ECF No. 10-14 at PageID 840.)

---

filed a motion for new trial on November 15, 2011.  On July 26, 2012, the Defendant filed an amended motion for new trial […]  the Defendant's issue is waived because he filed his motion for new trial approximately two months after the judgments were entered and subsequently filed his notice of appeal almost one year late").)

C.     **First post-conviction proceeding, delayed motion for new trial, and subsequent appeal**

On February 9, 2015, Petitioner filed a petition for post-conviction relief.  (ECF No. 10-15 at PageID 855–80 ("First PCR Petition").)[5]  Appointed counsel, Megan R. House (*see* ECF No. 10-15 at PageID 881, 910, 916), filed an amended petition for post-conviction relief on February 12, 2016.  (ECF No. 10-15 at PageID 882–91 ("First Amended PCR Petition").)  In the First PCR Petition and First Amended PCR Petition, Petitioner requested the opportunity to file a delayed motion for new trial.  *See Turner III*, 2022 WL 3573406, at *3.  (*See also* ECF No. 10-15 at PageID 890–91.)  On February 12, 2016, the State responded.  (ECF No. 10-15 at PageID 905.)  The post-conviction trial court held hearings on April 15, 2016 (ECF No. 10-16 at PageID 922–55) and May 18, 2016 (ECF No. 10-17 at PageID 957–66.)

On June 8, 2016, the trial court granted Petitioner's request to file a delayed motion for new trial.  However, after a July 13, 2016, hearing[6], the court denied the motion for new trial on July 18, 2016.  *See Turner II*, 2017 WL 3268543, at *1.[7]  Petitioner appealed the trial court's

---

[5]  Petitioner signed his first *pro se* petition for post-conviction relief and dated it January 29, 2015.  (ECF No. 10-15 at PageID 862.)  The petition bears a stamp by the clerk's office of the post-conviction trial court as having been filed on February 9, 2015.  (*Id*. at PageID 855.)

[6]  At the July 13, 2016 hearing, the court considered Petitioner's delayed motion for new trial, in lieu of resolving the first petition for post-conviction relief.  (ECF No. 10-18 at PageID 971 ("Mr. Turner was tried and convicted by this Court [and he] appealed.  The matter was referred back to us […] on post-conviction […]  In the post-conviction petition, the request was that counsel was ineffective for [for filing the motion for new trial late] […]  So I agreed to allow you to file a delayed motion for new trial, which is what we're going to hear today"); *see also id*. at PageID 981 ("So I don't find that there's any basis for granting a new trial").)  It appears from the state court record that, since the post-conviction trial court decided to consider Petitioner's delayed motion for new trial, the court considered Petitioner's first petition for post-conviction relief as not ripe for review.  That is, the court's consideration of the delayed motion for new trial seems to have rendered moot the first post-conviction petition's IAC claim about trial counsel's failure to file a timely motion for new trial. (*See* ECF No. 10-15 at PageID 882–83.)

[7]  *See also* ECF No. 10-15 at PageID 908-09 (June 8, 2016 Order Granting Delayed Filing Of Motion For New Trial And A Delayed Appeal); ECF No. 10-15 at PageID 911–14 (Petitioner's

ruling, contending the trial court erred by failing to require the State to produce Officer Falatko's statement.[8]  *See Turner II*, 2017 WL 3268543, at *1.  (*See also* ECF No. 10-15 at PageID 919.) Petitioner also argued the statement was newly discovered evidence that warranted a new trial.  *Id.*

On appeal, the TCCA again stated that the trial court erred when it concluded *Garrity* precluded the State from having to produce the statement.  *Id.* at *4.  Regardless, after examining the statement, the TCCA agreed with the trial court's determination that there were "no substantial discrepancies between Officer Falatko's statement and his trial testimony."  *Id.*  The TCCA further noted that any discrepancies identified by Petitioner did not affect the proof adduced at trial, showing that he was armed with the pistol and shot at Officer Falatko.  *Id.*  The TCCA concluded that the error was harmless and denied relief.  *Id.*  The TCCA also concluded that Petitioner was not entitled to a new trial because of newly discovered evidence, noting that the statement was not so crucial to the Petitioner's guilt or innocence that a reasonable basis existed to conclude that, had it been presented at trial, the result of the proceedings might have been different.  *Id.* at *5.

Petitioner, acting pursuant to Tenn. R. App. P. 11, filed a *pro se* application for permission to appeal the TCCA's decision to the TSC.  (ECF No. 10-25 at PageID 1054–55 and 1065.) Petitioner's application was denied on November 22, 2017.  (ECF No. 10-26 at PageID 1066; ECF No. 10-27 at PageID 1080.)

---

Delayed Motion For New Trial); ECF No. 10-18 at PageID 968-83 (transcript of July 13, 2016 hearing on Motion For New Trial); ECF No. 10-15 at PageID 917-18 (July 18, 2016 Order Denying Petitioner's Delayed Motion For New Trial); ECF No. 10-23 at PageID 1045-52 (July 31, 2017 opinion of the TCCA, affirming trial court's judgment); ECF No. 10-24 (July 31, 2017 judgment of the TCCA).)

[8] On appeal, House represented Petitioner.  *See Turner II*, 3268543, at *1.

### D.    <u>Second post-conviction proceeding</u>

Subsequently, Petitioner filed another *pro se* petition for post-conviction relief[9] on or about May 3, 2018.  *Turner III*, 2022 WL 3573406, at *3.  (*See also* ECF No. 10-27 at PageID 1082–90 ("Second PCR Petition"); https://tnwd-ecf.sso.dcn/doc1/17115410441 (Shelby County Criminal Justice System Portal) (last accessed Oct. 8, 2024).)[10]  Lance Chism was appointed as post-conviction counsel (ECF No. 10-27 at PageID 1091), and he filed an amended petition.  (ECF No. 10-27 at PageID 1094–1118 ("Second Amended PCR Petition").)  In the Second PCR Petition and the Second Amended PCR Petition, Petitioner raised numerous allegations of ineffective assistance of counsel ("IAC") by his trial and appellate attorneys.  *Turner III*, 2022 WL 3573406, at *3.  (*See also* ECF No. 10-27 at PageID 1084–88; ECF No. 10-27 at PageID 1099–1117.)  The State responded.  (ECF No. 10-27 at PageID 1119–39.)

At multiple post-conviction hearings, the post-conviction trial court heard testimony from trial counsel, appellate counsel, Higgs, Petitioner, and Petitioner's mother (Dannette Michelle Turner).  *Turner III*, 2022 WL 3573406, at *3–11.  (*See also* ECF No. 10-29 (September 12, 2019 transcript), ECF No. 10-30 (November 22, 2019 transcript), ECF No. 10-31 (December 9, 2019 transcript), ECF No. 10-32 (December 17, 2019 transcript), ECF No. 10-33 (January 29, 2020 transcript).)  On April 19, 2021, the post-conviction trial court denied relief.  (ECF No. 10-27 at

---

[9]  The record suggests that the post-conviction trial court entertained Petitioner's second petition for post-conviction relief because his initial petition had never proceeded to a merits determination.  (*See* ECF No. 10-27 at PageID 1141.)

[10]  The timestamp by the clerk's office of the post-conviction trial court—showing the date Petitioner's second petition for post-conviction relief was received at the clerk's office—is obstructed.  (*See* ECF No. 10-27 at PageID 1082.)  Given the large span of time between the March 2, 2018, date that Petitioner inserted on the petition (*id.* at PageID 1090) and the May 3, 2019, date the petition was logged as filed in the Shelby County Criminal Justice System portal, the Court construes May 3, 2018, as the most reliable and verifiable filing date for Petitioner's second petition for post-conviction relief.

PageID 1140–70.)   The court framed the issues before it as seventeen claims of IAC by trial counsel and appellate counsel and concluded that Petitioner "has failed to prove by clear and convincing evidence that he was denied effective assistance of counsel by his Trial or Appellate Counsel."  (*Id.*)  (*See also* ECF No. 10-27 at PageID 1171 (April 19, 2021 judgment of the post-conviction trial court).)

On May 17, 2021, Petitioner, represented by Chism, filed a notice of appeal.  (ECF No. 10-27 at PageID 1172–77.)  On his second post-conviction appeal, Petitioner raised: (1) twelve claims of IAC; (2) a claim of cumulative error; and (3) a claim of post-conviction court error in denying his request for funding for a fingerprint expert (*see* ECF No. 10-28 at PageID 1199–1202).  *See Turner III*, 2022 WL 3573406, at *12.  (*See also* ECF No. 10-26 at PageID 1594–96.)  The State filed a response.  (ECF No. 10-37.)  On August 19, 2022, the TCCA affirmed the judgment of the post-conviction trial court.  *Turner III*, 2022 WL 3573406, at *1 and *22.  (*See also* ECF No. 10-28 at PageID 1690–1722; ECF No. 10-29 at PageID 1723.)  On December 14, 2022, the TSC denied Petitioner's application for discretionary review (*see* ECF No. 10-40).  (ECF No. 10-41.)

## E.   **The § 2254 Petition**

Petitioner's § 2254 Petition presents the following four (4) habeas claims:

1. Under Tennessee's "twenty-four-hour merger rule," Petitioner's "convictions … all stemmed from a 'single' criminal episode" and therefore should have been considered as a single offense when determining his offender classification (ECF No. 1 at PageID 5 ("Claim 1"));

2. Petitioner's "overall character should [have] be[en] considered" as "mitigation proof" (*id.* at PageID 8 ("Claim 2"));

3. "Tennessee Rule of Evidence 609 provides that a prior conviction may be used to impeach a witness, so long as certain requirements are met" (*id.* at PageID 10 ("Claim 3")); and

4. "The [E]ighth [A]mendment, which is applied to the states through the Fourteenth Amendment, prohibits cruel and unusual punishment and requires

that the punishment imposed must be proportional to the severity of the offense in the capital case context." (*Id*. at PageID 7 ("Claim 4").) (Claims 1 – 4 are collectively referred to as the "Four Initial Habeas Claims.")

Petitioner does not specify the particular relief he seeks. (ECF No. 1 at PageID 15.)

The Court directed Respondent to file the state-court record and answer the § 2254 Petition. (ECF No. 7.) Respondent complied. (*See* ECF No. 10 (state court record); ECF No. 11 (MTD).)

In the MTD, the Respondent argues that:

1. Claims 2 and 3 are insufficiently alleged under Rule 2(c) of the Rules Governing Section 2254 Cases in the United States District Courts ("Habeas Rules") (ECF No. 12 at PageID 1813 n.3);

2. Claims 1, 2, and 3 are not cognizable in federal habeas because they allege violations of state law (*id*. at PageID 1813); and

3. Claims 1, 2, 3, and 4 are procedurally defaulted. (*Id*. at PageID 1813, 1816–23.)

In the MTD Response, Petitioner argues that Claims 1, 2, and 3 "are firmly established in federal law"—specifically, in the Sixth Amendment right to effective assistance of counsel, although these claims were not initially pled as ineffective assistance claims. (ECF No. 18 at PageID 1837, 1841–42.) In fact, Petitioner purports to represent that Respondent agrees Claims 1, 2, and 3 are Sixth Amendment claims of IAC. (*See id*.) Disputing that Claims 1, 2, and 3 are IAC claims, Respondent challenges Petitioner's "attempt[] to morph these no[n][-]cognizable claims into exhausted, federal constitutional … Sixth Amendment … claims." (ECF No. 19 at PageID 1849.)

Petitioner's MTD Response does not address the MTD's argument that Claim 4 is procedurally defaulted. (*See* ECF No. 18.)

## MOTION TO AMEND

In the MTA, Petitioner asserts seven claims of IAC by trial counsel and appellate counsel

and a cumulative error claim:

1. "Petitioner's legal representation in the trial court violated the Sixth Amendment's guarantee to effective assistance of counsel" because "[t]rial [c]ounsel was ineffective for his failure to request a Rule 609 *Morgan* hearing[11] to determine which, if any, of Petitioner's convictions the State could use against him at trial";

2. "Trial counsel's failure to conduct a 609 Morgan hearing to determine which of Petitioner's convictions could be used at trial fell below an objective standard of reasonableness"[12];

3. "Trial Counsel was ineffective for failing to interview the paramedics who responded to the scene on the night of the crime";

4. "Trial Counsel's failure to hire an independent forensic expert to examine the derringer for fingerprints was objectively unreasonable, given the varying testimonies of the State's witnesses";

5. "Trial Counsel's representation of Petitioner was ineffective when counsel remained silent at Petitioner's sentencing hearing and offered no argument or witness for mitigation";

6. "Trial Counsel's failure to file a timely motion for a new trial is presumptively prejudicial and violates the Sixth Amendment's guarantee to effective assistance of counsel";

7. "Appellate Counsel was ineffective for failing to argue in her motion for a new trial and on appeal that the State's nondisclosure of Officer Falatko's interdepartmental statement was a Brady and Jencks violation"; and

---

[11] At the hearing on Petitioner's second petition for post-conviction relief, Garrett testified. He "acknowledged that he did not file a pretrial motion requesting a hearing pursuant to Tennessee Rule of Evidence 609, alternately referred to as a *Morgan* hearing. *See State v. Morgan*, 541 S.W.2d 385 (Tenn. 1976). The hearing would have determined which of the Petitioner's prior convictions could be used for impeachment purposes, especially when some of the prior convictions were similar to the charges for which the Petitioner was on trial." *See Turner III*, 2022 WL 3573406, at *3.

[12] Petitioner presents as two distinct amended claims his issues about trial counsel's: (1) "failure to request a Rule 609 *Morgan* hearing"; and (2) performance regarding a *Morgan* hearing that fell "below an objective standard of reasonableness." (*See* ECF No. 20 at PageID 1857–59.)

> 8. "The cumulative errors of Petitioner's trial and appellate counsel combined resulted in ineffective assistance of counsel, ultimately depriving him of due process of law under the Fourteenth Amendment."

(ECF No. 20 at PageID 1857–68 (the eight claims in the MTA are collectively referred to as the "Proposed Amended Habeas Claims")).

In the MTA Response, Respondent argues that: (1) the MTA's proposed amendment of the § 2254 Petition would be futile because (a) the MTA's purported new claims are time-barred under 28 U.S.C. § 2254(d)(1)(A) and (b) Petitioner is not entitled to equitable tolling (ECF No. 22 at PageID 1879–87); (2) Petitioner "has not shown a gateway claim of actual innocence" to permit consideration of his time-barred amended claims (*id*. at PageID 1874, 1886); and (3) alternatively, the MTA's proposed amendments of the § 2254 Petition "are futile because they are plainly meritless." (*Id*. at PageID 1887–98.)

Petitioner did not file a reply to the MTA Response, and the deadline for doing so has expired. (*See* ECF No. 7 at PageID 42.)

## A.     <u>The Proposed Amended Habeas Claims Are Untimely</u>

Construing the record liberally in Petitioner's favor, he filed his initial § 2254 Petition on March 28, 2023. (ECF No. 1 at PageID 15.)[13] He filed the MTA on December 3, 2023. (ECF No. 20 at PageID 1869.)

---

[13]    Petitioner dated the § 2254 Petition "7 Feb. 2023." (ECF No. 1 at PageID 15.) He left blank the section of the § 2254 petition form where he should have indicated the date he placed his habeas petition into the prison mailing system to send to the Clerk of Court. (*See id*.) Petitioner had the § 2254 Petition notarized on March 28, 2023. (*See id*.) Under the "prison mailbox rule" of *Houston v. Lack*, 487 U.S. 266, 270 (1988), and the Sixth Circuit's subsequent extension of that rule in *Richard v. Ray*, 290 F.3d 810, 812 (6th Cir. 2002) and *Scott v. Evans*, 116 F. App'x 699, 701 (6th Cir. 2004), a prisoner's legal mail is considered "filed" when he deposits his mail in the prison mail system to be forwarded to the Clerk of Court. Giving Petitioner the benefit of liberal construction of the record in his favor, the Court construes March 28, 2023 as the date he placed the § 2254 Petition into the NWCX mail system.

There is a one-year statute of limitations for the filing of a petition for a writ of habeas corpus "by a person in custody pursuant to the judgment of a State court." 28 U.S.C. § 2244(d)(1). The AEDPA establishes "a tight time line, a one-year limitation period ordinarily running from 'the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review.'" *Mayle v. Felix*, 545 U.S. 662 (2005). "Any attempt to raise a new claim for relief in a Rule 15 motion to amend pleadings is subject to AEDPA's one-year statute of limitations." *Howard v. United States*, 533 F.3d 472, 475 (6th Cir. 2008).

Under § 2244(d)(1)(A), the running of the limitations period commences on "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review." State convictions ordinarily become final when the time expires for filing a petition for a writ of certiorari from a decision of the highest state court on direct appeal. *Pinchon v. Myers*, 615 F.3d 631, 640 (6th Cir. 2010); *Sherwood v. Prelesnik*, 579 F.3d 581, 585 (6th Cir. 2009).

Here, the TCCA affirmed Petitioner's convictions and sentences on December 18, 2013. *See Turner I*, 2013 WL 6706092, at *1, *5. (*See also* ECF No. 10-11 at PageID 803–09; ECF No. 10-12 at PageID 810.) The TSC denied permission to appeal on May 23, 2014. *See Turner I*, 2013 WL 6706092, at *1. (*See also* ECF No. 10-14 at PageID 840.) Petitioner's conviction became final upon the expiration of his time to file a petition for a writ of certiorari with the United States Supreme Court, which occurred on Tuesday, February 20, 2018—*i.e.*, ninety (90) days after the TSC denied discretionary review on November 22, 2017 (*see* ECF No. 10-26 at PageID 1066), which marked the conclusion of Petitioner's appeal of denial of his delayed motion for new trial. *See* Sup. Ct. R. 13.1 (requiring a petition for writ of certiorari to be filed with the Clerk of the United States Supreme Court within ninety (90) days after entry of order denying discretionary

14

review); *see also Gonzalez v. Thaler*, 565 U.S. 134, 149–50 (2012) (a petitioner's judgment becomes final at the conclusion of delayed direct appeal); *Jimenez v. Quarterman*, 555 U.S. 113, 119–21 (2009) (same). The running of the § 2254 limitations period commenced on February 21, 2018.

The AEDPA statute provides that "[t]he time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection." 28 U.S.C. § 2244(d)(2). Here, the running of the limitations period commenced on February 21, 2018. The limitations period ran for seventy-one (71) days until it was tolled when Petitioner filed his second *pro se* petition for post-conviction relief on May 3, 2018. (*See* ECF No. 10-27 at PageID 1082–90; https://cjs.shelbycountytn.gov/CJS/Home/WorkspaceMode?p=0 (last accessed Oct. 8, 2024).) After the TCCA entered its August 19, 2022 judgment on Petitioner's post-conviction appeal (ECF No. 10-38 at PageID 1690–1722; ECFF No. 10-39 at PageID 1723) and Petitioner filed an application to appeal, the TSC denied discretionary review on December 14, 2022. (ECF No. 10-41 at PageID 1806.) At that point, two hundred and ninety-four (294) days remained in the habeas limitations period[14]—meaning that Petitioner's habeas statute of limitations expired on Wednesday, October 4, 2023. In other words, Petitioner had until October 4, 2023, to file a timely habeas petition and any amendments. *See* 28 U.S.C. 2244(d)(1).

---

[14] The one-year habeas statute of limitations is not tolled during the ninety days a petitioner could file a writ of certiorari in the United States Supreme Court following the conclusion of state collateral review. *See Lawrence v. Florida*, 549 U.S. 327, 329, and 332 (2007) (a state application for post-conviction or other collateral review is not "pending" for the purpose of § 2244(d)(2) when the state courts have entered a final judgment on the matter but a petition for certiorari has been filed with the Supreme Court).

Petitioner filed his initial § 2254 Petition on March 28, 2023. (ECF No. 1 at PageID 15.) The initial § 2254 Petition is, therefore, timely.

However, Petitioner's MTA—filed on December 3, 2023—was not timely under 28 U.S.C. 2244(d)(1). Therefore, Petitioner's Proposed Amended Habeas Claims in the MTA are time-barred unless, as analyzed below, they relate back to his initial § 2254 Petition.

**B.     The Proposed Amended Habeas Claims Do Not Relate Back To The Four Initial Habeas Claims**

Pursuant to 28 U.S.C. § 2242, a federal habeas petition may be amended according to the requirements set forth in Federal Rule of Civil Procedure 15, which governs amendment of claims. *See, e.g., Oleson v. United States*, 27 F. App'x 566, 568–570 (6th Cir. 2001). Under certain circumstances, Rule 15 allows amendments to "relate back" to the date of the original pleading when the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out in the original pleading. Fed. R. Civ. P. 15(c)(1)(B.) However, "[a]n amended habeas petition ... does not relate back (and thereby escape AEDPA's one-year time limit) when it asserts a new ground for relief supported by facts that differ in both time and type from those the original pleading set forth." *Mayle,* 545 U.S. at 664; *see also United States v. Clark*, 637 F. App'x 206, 209 (6th Cir.), *cert. denied*, 136 S. Ct. 2032, 195 L. Ed. 2d 234 (2016.) In other words, "Rule 15(c)(2) relaxes, but does not obliterate, the statute of limitations; hence relation back depends on the existence of a common 'core of operative facts' uniting the original and newly asserted claims." *Mayle*, 545 U.S. at 659.

"[A] petitioner does not satisfy the Rule 15 'relation back' standard merely by raising some type of ineffective assistance in the original petition, and then amending the petition to assert another ineffective assistance claim based upon an entirely distinct type of attorney misfeasance." *See Watkins v. Deangelo-Kipp*, 854 F.3d 846, 850 (6th Cir. 2017) (quoting *Cox v. Curtin*, 698 F.

Supp. 2d 918, 931 (W.D. Mich. 2010)).  The Supreme Court expressly rejected an interpretation

of the same "conduct, transaction, or occurrence" to mean the same "trial, conviction, or sentence."

*See Mayle*, 545 U.S. at 664.  In short, the untimely claims in the proposed Amended Petition relate

back to the claims in the timely § 2254 Petition only if the Amended Petition's claims and the §

2254 Petition's claims share a common core of operative facts.

The Proposed Amended Habeas Claims do not share a common core of operative facts

with the Four Initial Habeas Claims.  All of the Proposed Amended Habeas Claims concern the

alleged IAC of trial counsel Garrett (ECF No. 20 at PageID 1857–66 and 1867–68) and appellate

counsel House (*id.* at PageID 1866–68).  Conversely, the § 2254 Petition raises no IAC claims.

(ECF No. 1 at PageID 5, 7, 8, and 10.)  In short, no claims similar in type to the Proposed Amended

Habeas Claims were raised in the initial § 2254 Petition.  For that reason, the Proposed Amended

Habeas Claims (1) do not relate back to the Four Initial Habeas Claims and (2) are untimely under

28 U.S.C. § 2244(d)(1).

Section 2244(d)(1)'s one-year statute of limitations is not jurisdictional and is subject to

equitable tolling in extraordinary circumstances.  *Johnson v. Settles*, No. 1:17-cv-01195-STA-egb,

2018 WL 1788064, at *1 (W.D. Tenn. Apr. 13, 2018) (citing *McClendon v. Sherman*, 329 F.3d

490, 492 (6th Cir. 2003)).  Traditional equitable tolling requires a petitioner to show that (1) "he

has been pursuing his rights diligently;" and (2) "some extraordinary circumstance stood in his

way and prevented timely filing."  *Holland v. Florida*, 560 U.S. 631, 649 (2010) (internal quotation

marks omitted).  Here, Petitioner has not alleged, and the record does not disclose, that equitable

tolling of § 2244(d)(1)'s limitation statute is appropriate to rescue the untimely Proposed Amended

Habeas Claims.  (*See* ECF No. 20.)

Because it would be futile to amend the § 2254 Petition to include the MTA's time-barred claims that do not relate back to the § 2254 Petition, the MTA (ECF No. 20) is **DENIED** in its entirety. The initial § 2254 Petition (ECF No. 1) is the operative habeas petition in the case. *See Wren v. United States*, No. 17-2054, 2018 WL 4278569, at *3 (6th Cir. Sept. 6, 2018) (observing that futility of amendment is one factor to consider in determining whether amendment should be allowed and finding that untimely amendments would be futile).

### STANDARDS OF REVIEW FOR THE § 2254 PETITION

**A.    Exhaustion**

A federal court may not grant a writ of habeas corpus on behalf of a state prisoner unless, with certain exceptions, the prisoner has exhausted available state remedies by presenting the same claim sought to be redressed in a federal habeas petition to the state courts pursuant to §§ 2254(b) and (c). *Cullen*, 563 U.S. at 181. The petitioner must "fairly present" each claim to each appropriate state court, *Baldwin v. Reese*, 541 U.S. 27, 29 (2004), except where the state has explicitly disavowed state supreme court review as an available state remedy, *O'Sullivan v. Boerckel*, 526 U.S. 838, 847–48 (1999). Tennessee Supreme Court Rule 39, effective June 28, 2001, eliminated the need to seek review in the TSC to "be deemed to have exhausted all available state remedies." *Adams v. Holland*, 330 F.3d 398, 402 (6th Cir. 2003); *see also Smith v. Morgan*, 371 F. App'x 575, 579 (6th Cir. 2010).

To fairly present a federal claim, a prisoner must present the same facts and legal theory to the state courts as is raised in his federal habeas petition. *See Anderson v. Harless*, 459 U.S. 4, 6–7 (1982); *Picard v. Connor*, 404 U.S. 270, 276–77 (1971); *Hodges v. Colson*, 727 F.3d 517, 529 (6th Cir. 2013) ("The exhaustion doctrine requires the petitioner to present the same claim under the same theory to the state courts before raising it on federal habeas review") (internal quotation

marks and alteration omitted).  In evaluating whether a prisoner has "fairly presented" a claim to

a state appellate court, the controlling document is the inmate's brief.  *See Baldwin*, 541 U.S. at

32 ("[O]rdinarily a state prisoner does not 'fairly present' a claim to a state court if that court must

read beyond a petition or a brief (or a similar document) that does not alert it to the presence of a

federal claim in order to find material, such as a lower court opinion in the case, that does so").

Where a state prisoner's claim has been adjudicated on the merits in state court, a federal

court can issue a writ only if the adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable
> application of, clearly established Federal law, as determined by the Supreme Court
> of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the
> facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1)–(2).  A petitioner carries the burden of proof for this "difficult to meet"

and "highly deferential standard," which "demands that state-court decisions be given the benefit

of the doubt" (referred to as "Habeas Standard of Review").  *Cullen*, 563 U.S. at 181 (internal

quotation marks and citations omitted).  A state court's decision is "contrary" to federal law when

it "arrives at a conclusion opposite to that reached" by the Supreme Court on a question of law or

"decides a case differently than" the Supreme Court has "on a set of materially indistinguishable

facts." *Williams v. Taylor*, 529 U.S. 362, 412–13 (2000).  "[A] run-of-the-mill state-court decision

applying the correct legal rule ... to the facts of a prisoner's case" does not "fit comfortably within §

2254(d)(1)'s 'contrary to' clause." *Id.* at 406.

## B.    <u>Procedural Default</u>

The procedural default doctrine is ancillary to the exhaustion requirement.  *See Edwards*

*v. Carpenter*, 529 U.S. 446, 452–53 (2000) (noting the interplay between the exhaustion rule and

the procedural default doctrine).  If a claim has never been presented to the state courts but a state

court remedy is no longer available (such as when an applicable statute of limitations bars a claim), the claim is technically exhausted due to the expiration of potential remedies but still barred by procedural default. *Coleman v. Thompson*, 501 U.S. 722, 731–32 (1991). Tennessee's one-year statute of limitations and "one-petition" rule on post-conviction petitions generally prevent a return to State court to litigate any additional constitutional claims. *See* Tenn. Code Ann. §§ 40-30-102(a) (one-year limitation period), 40-30-102(c) ("one-petition" rule); *Hodges*, 727 F.3d at 530 (noting that a Tennessee petitioner "no longer has any state court remedies to exhaust" when he failed to present claim in initial post-conviction petition). To avoid procedural default, a habeas petitioner in Tennessee must present his federal claims to the trial court and, on appeal, to the TCCA. *Covington v. Mills*, 110 F. App'x 663, 665 (6th Cir. 2004) (to avoid procedural default, federal law requires a federal habeas petitioner in Tennessee to present his federal claims to the TCCA). Accordingly, where a Tennessee habeas petitioner fails to fairly present his federal claim to the State courts prior to filing her federal habeas petition, there is generally no longer a State remedy to exhaust. In such cases, the claim is technically exhausted but procedurally defaulted. *See Jones v. Bagley*, 696 F.3d 475, 483 (6th Cir. 2012) ("When a petitioner has failed to present a legal issue to the state courts and no state remedy remains available, the issue is procedurally defaulted"). Due to Tennessee's "one-petition" rule for post-conviction proceedings, the Petitioner cannot now bring a claim in state court. *See* Tenn. Code Ann. § 40-30-102(c).

Under either scenario, a petitioner must show (1) cause to excuse his failure to present the claim and (2) actual prejudice stemming from the constitutional violation or, alternatively, that a failure to review the claim will result in a fundamental miscarriage of justice. *Schlup v. Delo*, 513 U.S. 298, 320–21 (1995); *Coleman*, 501 U.S. at 750; *see also House v. Bell*, 547 U.S. 518, 536–39 (2006) (to excuse a procedural default and permit consideration of the merits of a procedurally

defaulted claim, a petitioner must show "cause for the default and prejudice from the asserted error"); *Atkins v. Holloway*, 792 F.3d 654, 657 (6th Cir. 2015). A petitioner may establish cause by "show[ing] that some objective factor external to the defense"—a factor that "cannot be fairly attributed to" the petitioner—"impeded counsel's efforts to comply with the State's procedural rule." *Davila v. Davis*, 582 U.S. 521, 528, 137 S. Ct. 2058, 2065 (2017) (citations omitted). To establish prejudice, "a petitioner must show not merely that the errors at his trial created a possibility of prejudice, but that they worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *Garcia-Dorantes v. Warren*, 801 F.3d 584, 598 (6th Cir. 2015) (internal quotation marks omitted). The burden of showing cause and prejudice is on the habeas petitioner. *Lucas v. O'Dea*, 179 F.3d 412, 418 (6th Cir. 1999). To demonstrate a fundamental miscarriage of justice, a petitioner must establish that a constitutional error has probably resulted in the conviction of a person who is actually innocent of the crime. *Schlup*, 513 U.S. at 321.

## ANALYSIS

### A.     CLAIMS 1, 2, AND 3 ARE NOT COGNIZABLE IN FEDERAL HABEAS

Under 28 U.S.C. § 2254(a), a district court may entertain "an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court *only* on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254 (emphasis added). A state court decision that rests entirely on state law generally is not subject to federal habeas review. *See, e.g.,* S*warthout v. Cooke,* 562 U.S. 216, 218 (2011) (holding that claims alleging state law error or an incorrect application of state law do not present cognizable issues for federal habeas review: "We have stated many times that 'federal habeas corpus relief does not lie for errors of state law'") (internal citation omitted); *Estelle v.*

*McGuire*, 502 U.S. 62, 67–68 (1991) ("[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions"); *see also Wilson v. Parker*, 515 F.3d 682, 705 (6th Cir. 2008) ("[a] federal court cannot issue a writ of habeas corpus 'on the basis of a perceived error of state law'") (quoting *Pulley v. Harris*, 465 U.S. 37, 41 (1984)).  The threshold question in a federal habeas petition, therefore, is whether it even raises claims that a petitioner is in custody in violation of federal law.  As explained below, Claims 1, 2, and 3 of the § 2254 Petition do not.

### 1.    Claims 1 And 2 Challenge State Court Sentencing Determinations

In Claim 1, Petitioner contends that the trial court violated Tennessee's "twenty-four-hour merger rule" by not considering the three counts of robbery and one count of attempted aggravated robbery as a single criminal episode for the purpose of sentencing enhancement.  (ECF No. 1 at PageID 5.)  The guideline for offender classification is set forth in Tenn. Code Ann. § 40-35-106.  The commonly referred to "twenty-four-hour merger rule" states, in relevant part, that "convictions for multiple felonies committed within the same twenty-four-hour period" will constitute one conviction for the purposes of determining prior convictions unless one of the statutory elements of the prior convictions includes, in relevant part, "serious bodily injury, bodily injury, or threatened serious bodily injury."  Tenn. Code Ann. § 40-35-106(a)(4).  During state court proceedings, Petitioner's offender status was elevated from a standard offender (also referred to as a Range I offender) to a multiple offender (often referred to as a Range II offender) because each prior conviction was applied individually.  *See Turner III*, 2022 WL 3573406, at *13–14.

In Claim 2, Petitioner argues that "mitigation proof" and his "overall character" should have been considered at sentencing.  (ECF No. 1 at PageID 8.)  Petitioner, however, does not identify or describe the "mitigation proof" or "character" evidence to which he refers vaguely.

(*See id.*)  When determining the appropriate sentence length within the applicable offender range, a trial judge is charged, pursuant to under Tenn. Code Ann. § 40-35-210, with considering the applicability, or absence, of mitigating and enhancement factors set out in Tenn Code Ann. §§ 40-35-113 and 40-35-114.  *See* Tenn. Code Ann. § 40-35-210(c)(2).  The plausible inference from Claim 2 is that Petitioner disagrees with the alleged lack of consideration given to his "overall character" at the time of sentencing.  He does not, however, contend that his sentence is unconstitutional.  (ECF No. 1 at PageID 8.)

Petitioner's assertions in Claim 1 and Claim 2 that state sentencing law was misinterpreted or misapplied concern purely issues of state law.  An allegation that a sentence has been imposed in violation of state sentencing law does not present a constitutional issue.  *See e.g., Sneed v. Donahue*, 993 F.2d 1239, 1244 (6th Cir. 1993) (assertion that sentences were aggregated under state law causing an illegal total sentence is not a cognizable habeas corpus claim); *Howard v. White*, 76 Fed. App'x. 52, 53 (6th Cir. 2003) ("A state court's alleged misinterpretation of state sentencing guidelines and crediting statutes is a matter of state concern only").  Because Claim 1 and Claim 2 raise issues of state sentencing law, they are not cognizable in federal habeas.

**2.    Claim 3 Challenges A State Court Evidentiary Determination**

In Claim 3, Petitioner argues that he should have had a "pretrial Rule 609 hearing."  (ECF No. 1 at PageID 10.)  Tennessee Rule of Evidence Rule 609 provides that a prior conviction may be used to impeach a witness if certain requirements are met.  Tenn. R. Evid. 609(a)(1)–(3).  In support of Claim 3, Petitioner says only that "Tennessee Rule of Evidence 609 provides that a prior conviction may be used to impeach a witness so long as certain requirements are met."  (*Id.*)  He offers no supporting facts or arguments.  (*Id.*)

The Sixth Circuit has explained that habeas relief is rarely appropriate in connection with a state court's rulings about evidentiary issues, such as Petitioner raises in Claim 3:

> With regard to evidentiary rulings, the standard for habeas relief is not easily met. "[F]ederal habeas courts review state court evidentiary decisions only for consistency with due process." "A state court evidentiary ruling will be reviewed by a federal habeas court only if it were so fundamentally unfair as to violate the petitioner's due process rights." "[S]uch rulings "are usually not to be questioned in a federal habeas corpus proceeding." Even if errors are made in the application of state law, "[such] errors ... especially with regard to the admissibility of evidence, are usually not cognizable in federal habeas corpus." If a ruling is especially egregious and "results in a denial of fundamental fairness, it may violate due process and thus warrant habeas relief." Importantly, however, as a general matter, "state-court evidentiary rulings cannot rise to the level of due process violations unless they 'offend[ ] some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental.'" Ultimately, states have wide latitude with regard to evidentiary matters under the Due Process Clause.

*Wilson v. Sheldon*, 874 F.3d 470, 475–76 (6th Cir. 2017) (internal citations omitted). Here, Petitioner does not offer relevant facts, does not make arguments about, and does not cite federal authority supporting the proposition that Petitioner's pretrial Rule 609 argument involves a fundamental violation of due process. Because Claim 3 does not allege a violation of federal constitutional law, it provides no cognizable basis for habeas corpus relief.

## B.    CLAIMS 1, 2, 3 & 4 ARE UNEXHAUSTED CLAIMS THAT PETITIONER DID NOT FAIRLY PRESENT TO THE TCCA

Petitioner did not raise any of his habeas claims before the TCCA during direct appeal, *see Turner I*, 2013 WL 6706092, at *1 (*see also* ECF No. 10-9 at PageID 748), or during his appeal in his second post-conviction proceeding, *see Turner III*, 2022 WL 3573406, at *1, *11 (noting that Petitioner's appeal of denial of post-conviction relief raised twelve IAC claims, a claim of cumulative error, and a claim of trial court error in denying funding for a fingerprint expert) (*see also* ECF No. 10-15 at PageID 882–83 (amended petition for post-conviction relief, alleging IAC by trial counsel in failing to file a timely motion for new trial)). Of note as to Claim 4, Petitioner

never raised a stand-alone Eighth Amendment claim before the TCCA.  On his second post-conviction review, Petitioner raised an Eighth Amendment issue only within a claim of IAC by trial and appellate counsel.  *See Turner III*, 2022 WL 3573406, at *14–15.[15]  However, he failed to exhaust that claim to the highest available state court.

Because there is no avenue by which Petitioner may now obtain state-court review of Claims 1, 2, 3, and 4 (collectively, the "Unexhausted Claims"), they are technically exhausted but procedurally defaulted by Tennessee's applicable one-year statute of limitations and its prohibition against successive petitions.  *See Jones*, 696 F.3d at 483; Tenn. Code Ann. 40-30-102(a), -102(c).

Petitioner makes no effort to overcome his procedural default of the Unexhausted Claims. He does not allege cause and prejudice for his procedural default.  (ECF Nos. 1 and 18.)  *See Lucas*, 179 F.3d at 418; *Schlup*, 513 U.S. at 320–21.  Additionally, he makes no argument that failure to review the Unexhausted Claims would result in a fundamental miscarriage of justice. (ECF No. 1; ECF No. 18 at PageID 1839, 1841, and 1844 (alleging prejudice only in the context of alleged IAC, based on "trial counsel's election to say nothing at sentencing" and "trial counsel's failure to know and apprise him of the pros and cons of a *Morgan* hearing before trial".)  *See Schlup*, 513 U.S. at 321.  Accordingly, Petitioner has not met his burden of showing cause and

---

[15] *See Turner III*, 2022 WL 3573406, at *14–15 ("The Petitioner contends that trial counsel and appellate counsel were ineffective by failing to argue that his effective fifty-year sentence violates the prohibition against cruel and unusual punishment […]  The Eighth Amendment, which is applied to the states through the Fourteenth Amendment, prohibits cruel and unusual punishment and requires that the punishment imposed must be proportional to the severity of the offense in the capital case context […]  [T]he [post-conviction trial] court determined that neither trial counsel nor appellate counsel were deficient for raising the issue of cruel and unusual punishment and that appellate counsel was not deficient for failing to challenge the imposition of the maximum sentence within the range for the convictions of attempted first degree murder.  We agree").

prejudice or a fundamental miscarriage of justice to vitiate the procedural default of the Unexhausted Claims.[16]

For all of the reasons explained above, the MTD (ECF No. 11) is **GRANTED** and the § 2254 Petition (ECF No. 1) is **DISMISSED** in its entirety.

## **APPELLATE ISSUES**

There is no absolute entitlement to appeal a district court's denial of § 2254 petition. *Miller-El v. Cockrell*, 537 U.S. 322, 335 (2003); *Bradley v. Birkett*, 156 F. App'x 771, 772 (6th Cir. 2005). The Court must issue or deny a certificate of appealability ("COA") when it enters a final order adverse to a § 2254 petitioner. Rule 11, § 2254 Rules. A petitioner may not take an appeal unless a circuit or district judge issues a COA. 28 U.S.C. § 2253(c)(1); Fed. R. App. P. 22(b)(1).

A COA may issue only if the petitioner has made a substantial showing of the denial of a constitutional right, and the COA must indicate the specific issue or issues that satisfy the required

---

[16] What is more, Claims 2, 3, and 4 are also not properly pled under Habeas Rule 2(c), which requires a petition to "state the facts supporting each ground" for relief. "A petitioner's failure to fulfill the pleading requirements of Habeas Rule 2(c) provides an appropriate basis for dismissal." *Grimes v. Mays*, No. 3:19-cv-00585, 2022 WL 3582487, at *9 (M.D. Tenn. Aug. 19, 2022) (citing *Guerrero v. Ford*, No. 1:17-cv-00103, 2019 WL 330878, at *12 (M.D. Tenn. Jan. 25, 2019) (dismissing claim under Habeas Rule 2(c) where petitioner "d[id] not set forth any facts to support his allegation ..."). In Petitioner's case, Claim 2 does not identify the "mitigation proof" or describe the "overall character" evidence that he contends the sentencing court should have considered. (ECF No. 1 at PageID 8.) Claim 3 does not: (a) specify the "certain requirements" that Petitioner seems to suggest were met so as to warrant a pretrial hearing under Tenn. R. Evid. 609(a)(1)–(3) or (b) demonstrate that Petitioner did, in fact, satisfy them. (*Id*. at PageID 10.) Alleging "cruel and unusual punishment" generally in Claim 4, Petitioner says only that "[t]he Eighth Amendment, which is applied to the States through the Fourteenth Amendment, prohibits cruel and unusual punishment, requires that the punishment imposed must be proportional to the severity of the offense in the capital case context." (*Id*. at PageID 7.) He does not, however, identify the purported conduct or events that he contends constituted "cruel and unusual punishment." (*Id*. at PageID 7.) In short, because Petitioner does not set forth any facts to support the allegations of Claims 2, 3, and 4, those claims fail to satisfy Habeas Rule 2(c).

showing. 28 U.S.C. §§ 2253(c)(2) and (3). A "substantial showing" is made when the petitioner demonstrates that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Miller-El*, 537 U.S. at 336 (internal quotation marks omitted); *see also Henley v. Bell*, 308 F. App'x 989, 990 (6th Cir. 2009) (per curiam) (same). A COA does not require a showing that the appeal will succeed. *Miller-El*, 537 U.S. at 337; *Caldwell v. Lewis*, 414 F. App'x 809, 814–15 (6th Cir. 2011). Courts should not issue a COA as a matter of course. *Bradley*, 156 F. App'x at 773.

In this case, there can be no question that (1) Claims 1, 2, and 3 are not cognizable in federal habeas; (2) the Unexhausted Claims are procedurally defaulted because Petitioner did not fairly present them to the TCCA, does not allege cause and prejudice for his procedural default, and makes no argument that failure to review the Unexhausted Claims would result in a fundamental miscarriage of justice; and (3) Claims 2, 3, and 4 are improperly pled under Habeas Rule 2(c). Because any appeal by the Petitioner on the issues raised in his § 2254 Petition does not deserve attention, the Court **DENIES** a COA.

Rule 24(a)(1) of the Federal Rules of Appellate Procedure provides that a party seeking pauper status on appeal must first file a motion in the district court, along with a supporting affidavit. However, if the district court certifies that an appeal would not be taken in good faith, or otherwise denies leave to appeal *in forma pauperis*, the prisoner must file his motion to proceed *in forma pauperis* in the appellate court. *See* Fed. R. App. P. 24(a) (4)–(5). In this case, for the same reasons the Court denies a COA, the Court determines that any appeal would not be taken in

good faith.  It is therefore **CERTIFIED**, pursuant to Fed. R. App. P. 24(a), that any appeal in this

matter would not be taken in good faith, and leave to appeal *in forma pauperis* is **DENIED**.[17]

      **IT IS SO ORDERED**, this 5th day of December, 2024.

                                        *s/ Mark S. Norris*
                                        MARK S. NORRIS
                                        UNITED STATES DISTRICT JUDGE

---

[17] If the Petitioner files a notice of appeal, he must pay the full $605 appellate filing fee or file a motion to proceed *in forma pauperis* and supporting affidavit in the Sixth Circuit Court of Appeals within thirty (30) days of the date of entry of this Order.  *See* Fed. R. App. P. 24(a)(5).